## Galloway, Appellant, v. Prospect Park Borough School District.

Argued April 12, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John V. Diggins,* for appellant.

*E. LeRoy Van Roden* and *Ralph L. Lindenmuth,* for appellee, were not heard.

OPINION BY MR. JUSTICE STERN, June 17, 1938:

After reading the 700-page record in this case we find ourselves in accord with the statement made by the learned president judge of the court below in the course of his opinion that "the whole matter has been 'much ado about nothing.' "

The elected auditors of the Borough of Prospect Park, Delaware County, audited the financial affairs of the school district for the fiscal year 1933-1934, and filed their report in the office of the prothonotary. J. Leslie Galloway, who shortly before had been discharged by the School Board as secretary, filed an appeal from the report. At the hearing he insisted upon every item of the audit being vouched, with the result that eight days were consumed in the taking of testimony. At the very beginning he stated that his object was to show that the audit did not properly reflect the financial condition of the district, but he admitted that the corrections which he sought would not necessarily result in any surcharge. Most of his criticisms were directed to bookkeeping methods and practices of accounting, and thus dealt largely with matters of form rather than of substance.

During the course of the hearing the court suggested the necessity of procuring an independent audit by a certified public accountant, his fees to become part of the costs of the case. Both counsel acquiesced, and accordingly such an accountant was appointed; he re-

audited the books of the school district, and his report was presented to the court and became part of the record. The total receipts, disbursements, and cash balance as found by him agreed with the report of the borough auditors, the only variance being that certain items were listed under different classifications. The court entered a decree dismissing the appeal and ordering appellant to pay the costs, including the charges of the accountant.

On the appeal to this court, appellant has filed thirty assignments of error, most of them too trivial to warrant discussion. One of his principal objections is to the allowance of a credit for the purchase of athletic supplies and equipment, his claim being that no authority is given by the School Code for the expenditure of money for such purposes. Section 401 of the Act of May 18, 1911, P. L. 309, provides that "The board of school directors in every school district in this Commonwealth . . . may establish, equip, furnish, and maintain the following . . . departments for the education and recreation of persons residing in said district, which said . . . departments, when established, shall be an integral part of the public school system in such school district, and shall be so administered, namely: . . . Gymnasiums, Playgrounds, . . ." Section 701 provides: "The boards of school directors of each school district in this Commonwealth shall purchase all necessary furniture, equipment, text-books, school supplies, and other appliances for use of the public schools, or any department thereof, in their respective districts, and furnish the same free of cost for use in the schools in said districts, subject to such rules and regulations regarding the use and safe keeping thereof as the boards of school directors may adopt." The purchase of "equipment" and "other appliances" for use in school gymnasiums and playgrounds is thus clearly authorized. As for the term "school supplies," this is defined in section 706 as including, inter alia, "maps, globes, and all other

supplies, except text-books, necessary for school use." Physical education is as much a part of the school curriculum as are subjects of intellectual study,* and athletic supplies, therefore, are as "necessary for school use" as maps, globes, and similar objects. It is not the spirit of our public school system that only children with financial means to purchase their own supplies should have the opportunity of participating in school games and athletic sports. Of course, the extent to which athletic paraphernalia should be purchased for use merely by school teams playing in competitive sports is a question to be answered by school boards in the exercise of a cautious discretion, with special reference to the proportionate number of those who will receive the benefit of such supplies.

Various financial transactions of the district were criticized by appellant because they revealed occasional transfers of moneys from the sinking funds to the general fund, but when these transactions are analyzed it appears either that the practice was one of convenience in paying interest on bonds by the use of checks, the sinking funds being invested in savings accounts, or that, occasionally, excess amounts in the sinking funds resulting from interest accumulations were transferred into the general fund for current use. Only in one case was there found to be an insufficient balance in one of the sinking funds, but even in that instance the shortage occurred in a fiscal year prior to that which is the subject of the present audit, and there is no suggestion that it resulted from any illegal or improper use of the money; the court directed the School Board to make the necessary appropriation to the fund to bring it up to its requirements.

One of the teachers in the district became seriously ill and a substitute was required. It was the custom under

---

* By section 1607 of the act it is provided that, in every elementary public school, physical training shall be included in the branches taught.

such circumstances to pay the latter at the substitute rates and to remit only the balance each month to the regular teacher during her absence, but in this case the Board, in order to enable her to meet her emergency expenses at the hospital, made no deduction from her pay until the latter part of the school term. In the end she received no more than the amount to which she was entitled, and the school district was not harmed in any way.

Appellant complains that the secretary of the Board who replaced him was paid installments of salary before qualifying by the execution of a bond. When the bond was filed, it was retroactive in its terms and covered the liability of the secretary from the time when he began his service. There is nothing in this irregularity to justify a surcharge.

A small bonus was paid to the tax collector for having settled his 1933 tax duplicate in full. At that time his accounts were not quite completed, and it later appeared there was a balance due from him of $2.61, which he promptly paid. This is one example of the petty nature of most of the items involved in this litigation.

There is no evidence in the record that the school district sustained a loss in any of the transactions covered by the audit or that there was any fraud or dishonesty. No surcharge was made by the court below, and, as appellant failed to obtain a final decision more favorable to the district than that awarded by the auditors, the court properly imposed upon him the costs (Act of June 9, 1911, P. L. 865, section 3), including the fees of the special accountant.

After a careful consideration of all the assignments of error, they are overruled and the order of the court below is affirmed; costs to be paid by appellant.