# Zerbe Township School District v. Lark et al.

428

*Richard Henry Klein,* for plaintiffs.

*Charles C. Lark, James J. Gallagher, Daniel W. Kearney,* and *John M. Smith,* for defendants.

LARRABEE, P. J., twenty-ninth judicial district, specially presiding, October 20, 1945.—This matter is before the court on argument had on a rule granted against complainants in the bill, to show cause why the bill should not be dismissed for want of jurisdiction.

Plaintiffs filed their bill in equity on September 15, 1945, and the same day presented an application, supported by injunction affidavits, for a preliminary injunction, restraining defendants, their agents and employes from further mining and removing coal from the various tracts of land mentioned and described in the bill; and thereupon a preliminary injunction was issued restraining defendants, their agents and employes, from removing coal from the said tracts of land and September 18, 1945, at 10 a.m. was fixed as the time for a hearing on the question of whether the preliminary injunction should be continued. The same day the bill was filed an application was made to this court by plaintiffs for the appointment of a receiver to continue mining operations and collect the royalties accruing from the coal mined on these alleged county-owned lands, pending this litigation, and the court appointed Edward J. O'Rourke, cashier of the First National Bank of Trevorton, Pa., as receiver. His duties are more fully set forth later in the opinion.

The preliminary injunction did not enjoin, either as individuals or in their official capacity as county commissioners, the three commissioners of Northumberland County, to wit: Leroy Thomas, Ray M. Leffler, and James T. Kelley, who are named among the several defendants in the bill, and it did not enjoin Northumberland County.

No answer was filed by defendants and on September 18, 1945, counsel for the several defendants entered their appearances de bene esse and a petition was presented by the North Line Coal Company, one of the defendants, praying for a rule to be entered and directed to the complainants in the bill, to show cause why the question of jurisdiction of the subject matter of the controversy should not be preliminarily determined. The court thereupon granted a rule upon the complainants to show cause why plaintiffs' bill should not be dismissed for want of jurisdiction and made it returnable September 27, 1945, at 10 a.m.

Defendants presented their petitions for the rule, raising the question of jurisdiction, under the provisions of the Act of March 5, 1925, P. L. 23.

Plaintiffs, in their bill, complain as follows:

1. Frederick E. Lark, County Solicitor for the County Commissioners of Northumberland County, and Harry F. Reinhardt, County Mining Engineer for Northumberland County, and John J. Boback, a former commissioner of Northumberland County, acting directly and also acting indirectly through their agents and employes, and through their corporate associates and individual associates, including Domestic Coals, Inc., West Line Coal Company, North Line Coal Company, B. R. B. Coal Company, Bear Valley Sales Corporation and Webster Yocum and H. Marshall Reinhardt, have illegally received moneys from the mining and removal of coal and timber from coal lands purchased by the County of Northumberland at county treasurer's sales, and they should therefore make an accounting of such moneys and be declared constructive trustees of the same, for the benefit of the county and those taxing districts having taxes due against the said coal lands in the total sum of Four Hundred Ninety One Thousand Seven Hundred and Ten Dollars and Forty-eight cents ($491,710.48).

2. That Leroy Thomas, Ray M. Leffler, and James F. Kelley, the present commissioners of Northumberland County, have committed a breach of trust in their handling of coal lands in Zerbe Township, which were purchased for unpaid taxes by Northumberland County at county treasurer's sales in that they have permitted their agent to wit, the County Mining Engineer, to illegally obtain moneys directly and indirectly from the mining and removal of coal and timber from said lands, and that a receiver should be appointed under the Act of 1891 to take over and control these lands and operate them for the benefit of the taxing bodies having unpaid taxes due thereon.

3. That waste, as defined in the Act of July 2, 1937, P. L. 2790, in the mining and removal of valuable coal from the coal lands purchased by Northumberland County at county treasurer's sales and now owned by said county, is being committed by various persons, firms and corporations, and none of the royalties or proceeds of sale of said coal are being received by the county or any of the taxing districts having unpaid taxes due thereon.

4. That such waste should be restrained and that the commissioners of Northumberland County, after demand, have refused to take the necessary action provided by the Act of 1937 to curtail the same.

5. That plaintiffs, being the taxing districts having the largest amount of taxes due on the said coal lands on which waste is being committed, have suffered great loss thereby and the court should immediately issue an injunction in the nature of a writ of estrepement under the Act of 1937 restraining all persons from committing such waste, and that proper arrangements be made by the receiver herein requested to be appointed, in order that the taxing districts may receive their tax moneys out of the mining and sale of coal from said lands.

In support of their complaint plaintiffs aver, inter alia, as follows:

The School District of Zerbe Township is a school district of the fourth class under the acts of assembly and is a municipal subdivision of Northumberland County.

The Township of Zerbe is a township of the second class, as classified under the acts of assembly, and is a municipal subdivision of Northumberland County.

The County of Northumberland is a municipal subdivision of the Commonwealth of Pennsylvania, and is a county of the fifth class.

The bill then proceeds to name certain individuals and corporations, as well as certain individuals trading under the fictitious names act, as parties de-

fendant. Three of the defendants named, to wit, Leroy Thomas, Ray M. Leffler, and John F. Kelley comprise the board of commissioners for said Northumberland County. That one of the defendants, said Harry F. Reinhardt, has for several years and at the present time is appointed mining engineer in charge of coal lands for the County of Northumberland and that one of the defendants, Frederick E. Lark, Esq., is the solicitor to the Board of County Commissioners of said Northumberland County.

The bill further avers the County of Northumberland in thus purchasing said lands at county treasurer's sales, did so under the law as trustee for all taxing districts for taxes due on said lands, including plaintiffs herein.

Plaintiffs further aver in the bill that these several tracts of land so purchased by Northumberland County on April 29, 1943, have not been redeemed by the owners and are still owned by the county.

Plaintiffs allege in their bill that title to all of the said lands situate in Zerbe Township that were conveyed by the Philadelphia & Reading Coal & Iron Company to the Great Anthracite Coal Company and to the West Line Coal Company, respectively, as more fully identified in plaintiffs' bill, subsequently passed by sundry conveyances to various individuals and companies mentioned in the bill and named as parties defendant therein. And that later some of these lands were purchased by the County of Northumberland at a county treasurer's sale held in April 1943, and the other tracts were purchased by the County of Northumberland at county treasurer's sale held in January 1945, and deeds for same were delivered to the commissioners.

As to the question of jurisdiction raised by defendants in their rule, it is well settled that under the Act of March 5, 1925, P. L. 23, defendants' objections to jurisdiction are of two classes, between which there is

a clear and well settled distinction. The first of these classes relates to the authority of the court over the parties, and the second class relates to the authority of the court over the subject matter: See Commonwealth v. Barnett, 199 Pa. 161; Matthews v. Plum Township and Plum Township School District, 152 Pa. Superior Ct. 544.

Defendants in addition to the two classes of objections above set forth have also indicated in their argument that a third cause for lack of jurisdiction over the subject matter is that plaintiffs have an adequate remedy at law. In passing on this question we point out that the Act of March 5, 1925, P. L. 23, cannot be invoked to challenge preliminarily the rights of a plaintiff to proceed in equity instead of at law; this question is one of form of action and not cause of action, and must be raised under the Act of June 7, 1907, P. L. 440: See Rutherford Water Co. v. Harrisburg, 297 Pa. 33.

Thus it is clear that defendants, having chosen to file their objections under the provisions of the Act of March 5, 1925, are precluded from now contending in their argument that plaintiffs had an adequate remedy at law.

As to the jurisdiction of this court over defendants, it appears from the return of service and admissions of counsel, that service of process and copy of bill was had upon all defendants named in the bill except three, to wit: Marshall H. Reinhardt, Stanley Raup, and Henry D'Zickonski: See Rec., Vol. 2, page 13. Therefore, it is clear that the court has acquired jurisdiction over all of the parties to this proceeding except the three parties mentioned.

As to the jurisdiction of the court over the subject matter of the controversy it has been declared repeatedly by the Supreme Court of Pennsylvania that the question of jurisdiction relates solely to the competency of the court to determine controversies of the *general class* to which the case presented for its consideration

belongs: Gallagher v. Keystone Realty Holding Co. et al., 333 Pa. 9; Skelton v. Lower Merion Township, 298 Pa. 471.

It was also said in Gallagher v. Keystone Realty Holding Co. et al., supra, that (p. 11):

"The test of jurisdiction is whether the court has power to enter upon the inquiry, not whether it may ultimately decide that it is unable to grant the relief sought in the particular case: Kaisha, Ltd., v. Ewing-Thomas Corp., 313 Pa. 442."

And in Gallagher v. Keystone Realty Holding Co., supra, the Supreme Court quotes with approval what was said in Squire v. Fridenberg, 126 Pa. Superior Ct. 508, where it was declared (p. 512):

"The matters which the appellant raised as a preliminary question in the court below went to the right of the plaintiff to *recover* on his cause of action rather than to his right to have his cause of action *heard and determined*. With the former the Act of March 5, 1925, supra, is not concerned."

In a very recent decision in Sun Ship Employees Assn., Inc., v. Industrial Union, etc., 351 Pa. 84, the Supreme Court said (p. 87):

"A court may have jurisdiction over the subject matter of litigation even though the statement of claim or the bill of complaint be obviously demurrable as not setting forth a good cause of action. The test of jurisdiction is whether the court has power to enter upon the inquiry, not whether it may ultimately decide that it is unable to grant the relief sought in the particular case."

A bill in equity may also be sustained solely on the ground that it is the most convenient remedy: Appeal of The Brush Electric Co. et al., 114 Pa. 574 (page 585); Lehigh Valley R. R. Co. v. Graham, 64 Pa. Superior Ct. 437; The Edison Illuminating Co. v. Eastern Pennsylvania Power Co., 253 Pa. 457; and Peoples-Pittsburgh Trust Co. v. Saupp, 320 Pa. 138.

" 'Equitable jurisdiction does not depend on the want of a common law remedy, for whilst there may be such a remedy it may be inadequate to meet all the requirements of a given case, or to effect complete justice between the contending parties, hence the exercise of chancery powers must often depend on the sound discretion of the Court' ": Peoples-Pittsburgh Trust Co. v. Saupp, 320 Pa. 138, 146; Appeal of The Brush Electric Co. et al., 114 Pa. 574.

The Supreme Court of the United States has pointed out significantly that equity powers may be extended so as to afford a proper remedy under certain situations and are not to be circumscribed by inflexible rules. In Union Pacific Ry. Co. et al. v. Chicago, Rock Island & Pacific Ry. Co. et al., 163 U. S. 564, 601, that court laid down the following principle to aid in the application of equitable remedies when it declared:

"It must not be forgotten that in the increasing complexities of modern business relations equitable remedies have necessarily and steadily been expanded, and no inflexible rule has been permitted to circumscribe them."

And in the recent decision in Peoples-Pittsburgh Trust Co. v. Saupp, 320 Pa. 138, at page 146, the Supreme Court of Pennsylvania, in an opinion by Mr. Justice Maxey, established the following principle to aid the courts of our Commonwealth in administering equitable remedies when it declared:

"In Pomeroy's Equity Jurisprudence, 4th Edition, volume 1, section 111, appears this statement: 'Equity has followed the true principle of contriving its remedies so that they shall correspond both to the primary right of the injured party, and to the wrong by which that right has been violated. It has, therefore, never placed any limits to the remedies which it can grant, either with respect to their substance, their form, or their extent; but has always preserved the elements of flexibility and expansiveness, so that new ones may be

invented, or old ones modified, in order to meet the requirements of every case, and to satisfy the needs of a progressive social condition, in which new primary rights and duties are constantly arising, and new kinds of wrongs are constantly committed.' "

Therefore, in the light of the foregoing authorities even though counsel are unable to point to a decision where a somewhat similar situation arose, and the jurisdiction of equity was invoked, it does not necessarily follow that a court of equity does not have jurisdiction in the instant case.

In their bill plaintiffs aver, inter alia, that certain of the defendants have illegally received moneys from the mining and removal of coal and timber from said tracts of land that were purchased by the County of Northumberland at county treasurer's sales, as hereinbefore referred to.

Thus far plaintiffs' bill remains unanswered and undenied. Whether plaintiffs will be able to sustain their averments by sufficient competent testimony is another matter. However, assuming, for the purpose of passing on the question of jurisdiction, that the County of Northumberland, at the time of the acts complained of, held the legal title to the several tracts of land purchased by the Commissioners of Northumberland County, at county treasurer's sales in 1943 and 1945, the law is well settled that the commissioners held such lands as trustees for the benefit of all tax-levying authorities concerned. In a decision by the Superior Court of Pennsylvania, that of Andrews Land Corporation's Appeal, 149 Pa. Superior Ct. 212, that court, in referring to land that had been purchased by the Commissioners of Erie County at a public county treasurer's sale, declared that (p. 214) :

"The county took title to it, however, as trustee for the benefit of all the taxing authorities, county, city, borough, town, township, school district or poor district, which had valid, enforceable claims for unpaid

taxes against said land, in proportion to their respective interests."

And in another recent decision, Lackawanna County Appeal, 157 Pa. Superior Ct. 137, the Superior Court, in referring to land purchased by the County Commissioners of Lackawanna County, at a county treasurer's sale for nonpayment of taxes, said (p. 142) :

"Appellants [the county] held the property as trustees for the benefit of all the taxing authorities which had valid, enforceable claims for unpaid taxes against it, in proportion to their respective interests."

On this question of whether equity may acquire jurisdiction in a matter involving trustees, the law is well established that equity has jurisdiction in all cases of trusts, expressed or implied, resulting or constructive: See Peoples-Pittsburgh Trust Co. v. Saupp, 320 Pa. 138.

As to what constitutes *a constructive trust* the Supreme Court of Pennsylvania in Peoples-Pittsburgh Trust Co. v. Saupp, supra, at pages 143-144, said:

"In Beatty v. Guggenheim Exploration Co., 225 N. Y. 380, 122 N. E. 378, the New York Court of Appeals, speaking through Mr. Justice CARDOZO said: 'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.' Courts act upon the same logic in *implying* a trust.

" 'The jurisdiction of equity in all cases of trusts, express or implied, resulting or constructive, is unquestioned': 21 C. J., section 93, page 116. Pomeroy in his work on Equity Jurisprudence, 2d ed., vol. 1, sec. 151, says: 'The doctrine of trusts became and continues to be the most efficient instrument in the hands of a chancellor for maintaining justice, good faith and good conscience.' This was cited with approval in Clews v. Jamieson, 182 U. S. 461, 479."

Defendants, in their argument, cited the Act of June 6, 1836, P. L. 784, sec. 13, which section, in paragraph 1, declares that the courts of common pleas shall have the power and jurisdiction of courts of chancery as relates to the supervision and control of partnerships and corporations "other than municipal corporations", and defendants contend that the county being a municipality came within this provision wherein authority of a court of equity was excluded. However, we point out that the Supreme Court of Pennsylvania in Wharton et al. v. The School Directors of Cass Township et al., 42 Pa. 358, in referring to school districts, long ago declared (page 363) that:

"They [school districts] belong to that class of *quasi* corporations to which counties and townships belong— exercising within a prescribed sphere many of the faculties of a corporation."

And this principle was re-affirmed in the recent decision in Commonwealth v. Pittsburgh School District, 343 Pa. 394, in which the Supreme Court, referring to the several school districts of the Commonwealth, said (p. 396):

"Furthermore, as long ago as 1862, in Wharton v. School Directors of Cass Township, 42 Pa. 358, 363, we said: 'They belong to that class of quasi corporation to which *counties* and townships belong.'" (Italics supplied.)

It would thus clearly appear that Northumberland County is not to be classed as a municipal corporation within the meaning of section 13 of the Act of 1836, supra, but is a quasi corporation over which equity may have jurisdiction.

In Main Cleaners and Dyers, Inc., v. Columbia Super Cleaners, Inc., 332 Pa. 71, the Supreme Court said (p. 73):

". . . the Act of 1925 'was not intended to furnish a short cut to a determination of the issues of law or

fact, raised by the pleadings, however certain their ultimate determination may appear to be.' ": Lacka-wanna County v. James, 296 Pa. 225.

And in Gallagher v. Keystone Realty Holding Co. et al., 333 Pa. 9, the Supreme Court declared that (p. 11) :

"A court may have jurisdiction over the subject-matter of litigation even though the statement of claim or the bill of complaint be obviously demurrable as not setting forth a good cause of action."

Counsel for defendants in support of their contention that a court of equity does not have jurisdiction of the subject matter here, present the novel argument that title to the lands in question, which it is averred was solely in the County of Northumberland, was actually not vested in the county but remained in the former owner because of a special act which permits lands to be redeemed within five years by the former owner, for whose unpaid taxes the land was sold to the county commissioners, and therefore defendants are not trespassers in entering upon the lands and mining the coal. It seems to us this kind of argument savors too much of a legal quibble. Surely the legislature intended, and it has always been so considered, that when a purchaser of lands for unpaid taxes at a county treasurer's sale receives a deed from the county treasurer conveying title to the same the title is then vested in the purchaser, subject to redemption within the statutory period. It is true that in the case of lands purchased at county treasurer's sale, by the county commissioners, a period of redemption of five years is allowed; nevertheless it seems obvious that until such lands are so redeemed from the county commissioners, all persons, including the last former owner, have no lawful right to enter upon the lands much less remove valuable deposits or growths of timber therefrom.

It is obvious where the adoption of such a doctrine would lead: for illustration, let us suppose that during the statutory period allowed for redemption, the last former owner for whose unpaid taxes the property was sold at county treasurer's sale, was permitted to enter upon those lands under the plea that he was the real owner and proceeded to remove the coal from the land and then eventually failed or refused to redeem the same. Such so-called former owner could thus deplete and exhaust the coal deposits and thereby render the land practically worthless for taxing purposes, and with the title of the land still remaining in the county, this with great injustice and loss to the county and school districts.

Until such former owner, for whose unpaid taxes the lands were sold by the county treasurer, does actually redeem the land from such sale, he cannot by any stretch of the imagination lawfully be considered the owner of said lands while the legal title actually remains in the county commissioners. We can find no merit in this contention.

Under the clear cut principle of law declared in Andrews Land Corporation's Appeal, supra, and Lackawanna County Appeal, supra, the county holds these lands as trustee for the benefit of all the tax levying authorities concerned, and it is too plain for argument that until redeemed by the last former owner or sold by the county commissioners the title is entirely vested in the county.

As to defendants' arguments that these lands owned by the County of Northumberland, are not *public lands*, we cannot agree. Surely, lands that are owned by a political division, county or State, and held in trust for the use and benefit of the people of the political division are, in our opinion, constituted "public lands".

In plaintiffs' bill it is averred that defendants had been entering and committing acts upon lands owned by Northumberland County which, in effect, were

prejudicial to the interests of Zerbe Township and Zerbe Township School District.

On this question we point out that it is declared in subsection 5 of section 13 of the Act of June 16, 1836, P. L. 784, which act was extended to all courts of common pleas in the Commonwealth, by the Act of February 14, 1857, P. L. 39:

". . . the courts of common pleas . . . shall . . . have the power and jurisdiction of courts of Chancery, so far as relates to

"V. The prevention or restraint of the commission or continuance of acts contrary to law, and prejudicial to the interests of the community, or the rights of individuals."

And in Western Pennsylvania Hospital et al. v. Lichliter et al., 340 Pa. 382, the Supreme Court held that the courts of common pleas may still exercise the equitable jurisdiction conferred upon them by the above-cited Acts of 1836 and 1857, "unless these powers have been taken away from them by some statute". And these same acts were there commented upon by the Supreme Court as giving courts of common pleas general equitable jurisdiction in all proper cases. In its opinion in Com. ex rel. v. Pommer et al., 330 Pa. 421, the Supreme Court cites various decisions where a court of equity rightfully issued writs against various public officials including county commissioners. And in Wilson et ux. v. Philadelphia School District et al., 328 Pa. 225 (page 247) the court, in referring to the Act of June 16, 1836, P. L. 784, supra, declared these acts with other acts give the court power to grant such relief as justice requires and in that case the matter before the court involved the interest of taxpayers of the Commonwealth.

Plaintiffs in support of their position cite the Act of June 8, 1891, P. L. 208, which provides that as to the rights of one having *a contingent interest* in land, and not being in possession of the same, to prosecute in law

or equity to prevent commission of waste to real estate, or to recover damages for waste committed or injury done real estate, that he may proceed in the same manner and form as if such interest were vested in him, and he were in actual possession of the land.

Defendants, however, contend that neither the School District of Zerbe Township nor the Township of Zerbe are persons or parties having a contingent interest in the lands, and argue that the words "interest in any real estate" refer to actual title or ownership and not to a claim for taxes.

It seems to us that if the legislature had so intended, as argued by defendants, it would have been definitely expressed in the act that it was to be confined to such narrow limits as contended for by defendants. As the word "interest" is stated in said act it remains wholly unrestricted and unqualified and is not therein limited and we are of the opinion it is not intended to mean only title or right of title. On this question of having a contingent interest we point out that the interest in land, of any tax levying district, by reason of the right to levy taxes, is an interest so inherent and real that the actual owner may be entirely divested of his title on a sale for nonpayment of such taxes. The very nature of this right to levy an annual tax and to look to these lands for payment of the taxes is in itself such a direct and substantial interest as to constitute it a contingent interest. This interest is widely recognized as shown in the well known priority which the law gives to collection of taxes on realty and the established rule is that payment of taxes has undisputed priority over a mortgage or a judgment lien and also enjoys a priority with payment of wages to servants in the distribution of bankrupt estates. It seems to us that such a vital and inherent taxing interest in the land, by plaintiffs, brings the lands in the instant case, within the reasonable interpretation of the term "contingent interest" as used in the above cited statute.

Therefore, we are of the opinion that the averments in the bill, if sustained by sufficient competent testimony, clearly bring such acts of defendants within the *general class* which may be properly presented to a court of equity for its consideration as laid down in Gallagher v. Keystone Realty Holding Co. et al., 333 Pa. 9, and Skelton v. Lower Merion Township, 298 Pa. 471.

In paragraph numbered 65 in plaintiffs' bill it is averred that unpaid taxes totaling the sum of $491,710 were due from the owners of record of said lands before the lands were purchased by the County of Northumberland at county treasurer's sales, and it is also averred that at the time of the filing of this bill "the taxes on no tract involved have been paid in full".

Thus, according to averments in the bill, we have a situation where the County of Northumberland holds title to valuable tracts of coal land as trustee for the benefit of all the tax levying authorities in said county which include the plaintiffs, Zerbe Township and Zerbe Township School District, and the county commissioners have, down to the time of the filing of plaintiffs' bill, permitted certain individuals and corporations named as parties defendant, to enter upon such lands, and remove large quantities of valuable anthracite coal without requiring them to pay any royalty to the county on the coal, or make any accounting whatsoever for the quantity of coal removed.

It is further averred in plaintiffs' bill that the County Commissioners of Northumberland County have also permitted certain of the defendants to cut and remove a valuable stand of timber growing on one of these county-owned tracts without receiving any money whatsoever for the timber.

In their argument counsel for defendants raised the question that plaintiffs, in alleging wrongful acts on the part of defendants, did not aver specifically that the acts constituted a fraud, that is, plaintiffs did not

specifically use the word "fraud" in the averments, and defendants claim that by reason of this such averments of wrongdoing are not within the jurisdiction of a court of equity. An inspection of the various averments and complaints set forth in plaintiffs' bill show they have charged defendants with wrongful acts of such a nature that, if they could be sustained by sufficient competent testimony, they would amount to fraud in the commonly-accepted usage and meaning of that word.

Plaintiffs also aver in their bill that certain of the defendants have illegally received large sums of money from the mining and removal of coal and timber from said tracts of land purchased by the County of Northumberland at county treasurer's sale.

Plaintiffs, in paragraph 87 of their bill, allege that on March 26, 1945, members of the School District of Zerbe Township, at a meeting with representatives of the County Commissioners of Northumberland County, held in the Court House in Sunbury, advised the representatives of the county commissioners of the fact that royalties were being collected on coal lands in Zerbe Township, owned by the county, on which the said school board had large amounts of taxes due. It is further averred in said paragraph that at that time the representatives of the county, namely, the President of the Northumberland County Commissioners, R. Leroy Thomas and the solicitor, Frederick E. Lark, Esq., stated that they had caused a thorough investigation of such charges to be made and that it had been reported to them there was absolutely nothing to the claim that royalties were being collected on these coal lands. In said paragraph it is further averred that at that time the representatives of Zerbe Township School District stated that Harry F. Reinhardt was collecting these royalties, or had arranged for the collection of the same and this was denied by the representatives of the Northumberland County Commis-

sioners who "refused to take any further action in the matter".

It is self-evident from the averments in the bill that Zerbe Township and Zerbe Township School District have a vital interest in and must look to the value of these county-owned lands for the raising of proper taxes for the annual care and upkeep of the township roads and property as well as the township public schools. We are of the opinion that this interest is a contingent interest of a very substantial nature and therefore they would have a lawful standing to complain about the manner in which the rich deposits of coal are being removed without the county receiving any royalties whatever, and, according to the averments in the bill, these royalties are being received by private individuals and corporations, without any apparent responsibility whatsoever to the County of Northumberland.

Defendants, in effect, are contending that in the face of such a situation a court of equity has no jurisdiction and is powerless and the said Zerbe Township and School District of Zerbe Township are compelled to stand by helpless and see these lands depleted of their rich mineral and timber resources by private individuals and corporations with no responsibility to the county, the real owner of the land, and with the consequent depreciation in value for any future tax levying purposes. We cannot accede to such a proposition.

In the light of the decisions cited, the County of Northumberland holds these lands *as trustee* for the benefit of all the tax-levying authorities in the county which includes Zerbe Township. Clearly, a court of equity has jurisdiction over trustees and may compel an accounting if it be shown the trustees have been remiss or faithless in the performance of a duty which, it is here alleged, they owed the tax-levying districts. Also it may require an accounting to the court from those whom it is averred have wrongfully entered upon

said lands and removed valuable coal deposits and retained large sums in the form of royalties arising therefrom, which royalties it is averred are rightfully the property of the County of Northumberland as such trustee.

We are of the opinion that the principles of law laid down in Gallagher v. Keystone Realty Holding Co. et al., supra, and other cases cited, that a court of equity has jurisdiction to determine controversies of the *general class* to which this case belongs, and the test of jurisdiction is whether the court has power *to enter upon the inquiry*, are authority to confer equity jurisdiction in the instant case. We feel that the controversy before us belongs to that class of cases in which the appellate courts have held that the plaintiff has a right to have his cause of action *"heard and determined"*. (Italics added.)

A further objection raised by defendants is that a court of equity may not by injunction proceedings usurp the functions of the regularly elected county commissioners and substitute one of its own appointees to discharge alleged statutory duties of the county commissioners, and further that this court is without authority to appoint a receiver to direct certain persons to operate said coal properties.

As to the jurisdiction of a court of equity to issue an injunction in this matter, the writ of estrepement to prevent waste was originally given by the Statute of Gloucester 6th, Edward 1, Chap. 13, which, according to the Report of Judges in 3 Binney 593, is still in force in Pennsylvania. The writ of estrepement is in the nature of an injunction: Hough v. Monroe H. Kulp & Co., 24 C. C. 563. In Smith v. Chappell, 25 Pa. Superior Ct. 81, 86, in an opinion by Judge Smith, it was declared that the writ of estrepement is an ancient common law writ still in force in this State under the common law and acts of assembly and is a proper remedy to stay or prevent present or threatened waste.

"Like an injunction, it may be issued by a court of common pleas or any law judge thereof, and may be dissolved or continued as the case may seem to require. . . . As in proceedings in equity, an application for the writ may be made to the court or judge in the first instance . . ." Smith v. Chappell, supra.

The Supreme Court of Pennsylvania said in Smith & Fleek's Appeal, 69 Pa. 474:

"Cutting down timber to the prejudice of the inheritance is undoubtedly waste, and may be restrained under the equity power conferred on the courts, by the Acts of 16th June, 1836, and 14th February, 1857, for the 'prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals.' "

And in Jones v. Whitehead, 4 Pa. Law Journal Reports 330, the court said (p. 331):

"No principle of law is better settled than that a court of chancery will interpose by injunction to restrain such persons as tenants and others from committing waste. . . ."

To the same effect is 67 Corpus Juris 624.

The Act of July 2, 1937, P. L. 2790, provides that when any seated or unseated lands shall have been sold for arrearages of taxes by the County Treasurer of any county in this Commonwealth, it shall be lawful for the purchaser or purchasers of said lands to apply to any court of common pleas of the county in which the lands are situated and on presentation of a petition and affidavits made by them or by some other *interested* person, setting forth that the owner or owners, or some other person acting under the owner or owners, are committing waste to said lands and that the petitioner apprehends that such waste will be committed unless the same be restrained by law, it shall be the duty of such courts to order a writ of estrepement to issue to stay waste upon such lands. This act

further declares that the term "waste" shall be construed to mean and include the spoil or destruction done or permitted to lands, including the quarrying and mining of coal or other minerals whether in new or existing quarries or mines, and such other acts as will do lasting injury to the premises.

Here we have explicit authority from the State legislature that the purchasers of these lands, to wit, Northumberland County, or any other *interested* person has the right to apply for a writ of estrepement, which writ is in the nature of an injunction.

The law is well settled in Pennsylvania that a court of equity has the right to restrain the unauthorized appropriation of public property for private use. (See Commonwealth v. The Pittsburg & Connellsville Ry. Co., 24 Pa. 159; City of Pittsburg v. Epping-Carpenter Co., 194 Pa. 318; Groff et al. v. Bird-in-Hand Turnpike Co., 128 Pa. 621.) This right in the courts is sometimes referred to as a purpresture.

The authorities on this question all clearly indicate that the writ of estrepement and the writ of injunction for the purpose of restraining waste are alike in their nature.

In the light of the authorities cited and the express language of the Act of July 2, 1937, supra, the plaintiffs had the lawful right to present a petition averring that waste was being committed and we feel this court has the authority to issue a preliminary injunction, for the purpose of restraining any further acts of waste.

Therefore, in view of the averments in plaintiffs' bill, which remain undenied and unanswered on the record, and in the light of the several authorities cited, we conclude that the Court of Common Pleas of Northumberland County, sitting as a court of equity, has jurisdiction of the subject matter averred in plaintiffs' bill.

At the time plaintiffs' bill was presented the court appointed Edward J. O'Rourke, Cashier of the First

National Bank of the Village of Trevorton, located in said Zerbe Township, as temporary receiver, of the anthracite coal mines, the anthracite coal mining operations, and the anthracite coal stripping operations then being conducted or operated upon the tracts of coal land set forth in plaintiffs' bill, and directed the receiver to give a surety bond. The court authorized the receiver to take possession of the mines, mining operations and manage and conduct the same in such manner as in his judgment would produce the most satisfactory results, and that the royalties derived therefrom shall be received by the receiver; he was also directed to take and sell the coal that is mined and stripped from these lands or enter into suitable contracts to permit the same to be sold by the persons now mining or stripping them, provided, however, that the royalties on said coal were to be received by the receiver. And he was to make such payments and disbursements as he might deem necessary and in brief to otherwise exercise the usual powers of a receiver in equity. The court reserved therein full right and jurisdiction to make from time to time such orders as may be proper amplifying, extending or limiting or otherwise modifying this order of appointment.

As to the jurisdiction of a court of equity to make such appointment, the Supreme Court of Pennsylvania held in Duff's Appeal, 21 W. N. C. 491, that where the lower court had issued a writ of estrepement to restrain waste and appointed a receiver to allow the mining company to continue mining operations and the receiver was to collect the royalties during the pendency of the litigation that this procedure on the part of the court below was approved by the Supreme Court.

In this connection counsel for defendants in their argument have raised the question as to the nature or legal status of royalties. We think it pertinent to recall

here what was said by the Supreme Court in Duff's Appeal, supra, to wit (p. 492):

"The instrument under whose provision it has been paid is called a lease, but the royalties to be paid under it have none of the qualities of rent. They certainly are the price of the coal in place. They are not paid for the use of the tract by a tenant, but for the price of the chief article of value in it by a purchaser. Every ton of coal mined reduces the tract in value, and when the mines upon it are exhausted the security for the mortgage debt is also exhausted."

In 53 Corpus Juris 41, §26, under the heading of "Receivers" it is said:

"It is proper to appoint a Receiver where the property in controversy is in imminent danger of being removed beyond the jurisdiction of the Court or unlawfully disposed of, or personal property or the rents and profits of real estate in dispute are in imminent danger of being lost or wasted."

The Act of June 8, 1891, P. L. 208, confers authority on a court of equity to appoint a receiver on the application of a person having a *contingent interest* in any real estate in Pennsylvania and not being in possession of the same, and to prosecute a suit at law or in equity to prevent the commission of waste to such real estate: the act further provides:

"That before any suit at law or equity is commenced, the said person or persons having such contingent interest, shall apply to the court of common pleas of the county where such land or part of the same is situated, for the appointment of some suitable person to take and receive any and all moneys that may be so received in any suit or suits . . .".

We interpret this to mean that in a situation such as is presented by the averments in plaintiffs' bill a receiver may be appointed to receive royalties that may lawfully accrue from any mining operations on the lands in question during the pendency of this litigation.

As to the defendants' contention that there is no power lodged in a receiver to sell or lease the lands in question, we find in the act, as amended April 21, 1937, P. L. 328, sec. 2; and the Act of July 1, 1937, P. L. 2616, sec. 1, that the board of county commissioners may sell or lease, either as lessor or lessee, any real property belonging to the county.

As to the right of a court of equity to appoint a receiver pending the determination of litigation before it, we find in volume 1, 2nd Ed., of "Clark on Receivers", page 204, §178:

"The general equity ground for the appointment of a receiver is, therefore, that the property in dispute is in danger of loss, destruction, deterioration or other impairment of its value through the neglect, waste, misconduct or other acts or failures to act on the part of the defendant or others who are holding the property."

In 65 Corpus Juris 864, §748, it is stated:

"In case trustees refuse to perform their duty to protect the trust estate, or are implicated in the wrong intended to be redressed . . . the cestuis que trust may sue in equity to protect their rights . . . and then, if there are trustees, they should, if possible, be brought before the courts as *parties defendant.*" (Italics supplied.)

For the reasons set forth we conclude that the Court of Common Pleas of Northumberland County, sitting as a court of equity, acquired jurisdiction of all the parties named as defendants in the plaintiffs' bill except the three, to wit: Marshall H. Reinhardt, Stanley Raupp and Henry D'Zickonski.

We also conclude this court has jurisdiction of the subject matter and has the authority to issue the preliminary injunction which is herein complained of by the defendants, and also the right to appoint a temporary receiver pending the outcome of this litigation.

### Decree

And now, to wit, October 20, 1945, the rule granted against the complainants in the bill, to show cause, if any they have, why the bill should not be dismissed for want of jurisdiction, is discharged at the cost of the petitioners for the rule.

NOTE.—The foregoing decision was appealed to the Supreme Court of Pennsylvania and affirmed: 353 Pa. 162.