## Hoffman v. Scranton School District

*Leon Levy*, for plaintiff.

*John J. Scott, John M. Kelly* and *Everett A. Rosser*, for defendant.

HOBAN, P. J., April 8, 1949.—The action is trespass for personal injuries. Preliminary objections to the complaint are in the nature of a demurrer.

The pertinent facts averred in the complaint are as follows:

The Scranton School District, a school district of the second class, owns Athletic Park, in the City of Scranton, an enclosed field of substantial size used for athletic sports and games and with provision for seat-

ing for spectators. On November 27, 1947, a football game took place in the park between teams representing two of the Scranton City High Schools, operated by the school district. Admission was charged and the public was invited to buy tickets and attend the game. This particular game was an annual event of great interest in the City of Scranton and on this day attracted more than 10,000 spectators. In Athletic Park there was a shed with a slanting roof, and upon this roof a series of wooden planks, separated by several feet and extending in parallel lines across the roof, were laid so as to give the appearance of prepared seating accommodations and were used as such by numerous spectators on that day. Plaintiff entered the park as a spectator and finding no accommodations otherwise ascended the roof referred to, remained seated there for approximately 10 minutes when the structure collapsed. Plaintiff fell to the ground 15 feet or more and received the injuries now the subject matter of this action. The negligence averred is that the collapse of the structure occurred because it was of insufficient strength to stand the weight of the people who were seated thereon, and was unsafe for the use to which it was placed, and defendant failed to warn plaintiff of the danger of using the structure for seating, or otherwise to prevent him from using it for seating purposes. As incidents to the general picture, amendments to the complaint set forth that the money received from the admission fees of the game being played in Athletic Park on that day became the property of defendant; that defendant leased other portions of the premises to a farmers' market on an annual basis for a money rental, and that within Athletic Park at athletic events, to which the public were invited upon the payment of admission fees, refreshments were sold by concessionaires who paid a

percentage of their sales income to defendant for such concessions.

It is the theory of plaintiff that the school district, in conducting upon its property athletic events of the type 'described, which were open to the public and to which admission fees were charged, was acting in a corporate or proprietary capacity rather than in a governmental capacity, and hence is responsible under the general rules governing municipal or quasi-municipal corporations for liability for harm occurring to invitees upon the premises because of the negligence of defendant, its agents or employes.

Defendant by preliminary objections, takes the position that the complaint fails to set forth a cause of action specifically, because defendant is an agent of the Commonwealth and therefore is not liable for the tortious acts of its servants, agents or employes, and that in any event at the time of the alleged tortious conduct on the part of defendant, or its agents, leading to the harm to plaintiff, it was engaged in the performance of governmental functions and entitled to avoid liability for that reason.

If the school district could be considered a municipality or a municipal corporation, similar in nature to a city, borough or township, we are of the opinion that the conduct of athletic games and the encouragement of attendance for a fee by spectators would be classed as a corporate or proprietary activity. See Honaman et al. v. Philadelphia, 322 Pa. 535.

In the Honaman case just cited, Mr. Justice Linn observed:

"The distinctions in the law determining tort liability of municipal corporations arising out of the exercise, on the one hand, of so-called governmental functions, and, on the other, of corporate or proprietary functions, have long been in a state of confusion and uncertainty which the courts are powerless to

correct; the subject should receive careful legislative attention."

The cases subsequent to the Honaman case have done little to resolve the confusion, perhaps because they could not do so without legislative attention, as suggested by Mr. Justice Linn.

It is argued that a school district is merely an agent of the Commonwealth, restricted in its purpose to the narrow function of conducting the maintenance and support of the public schools within its territorial division: Carlo v. Scranton School District, 319 Pa. 417. That the conduct of the public schools is a governmental function cannot be questioned, for regardless of the common-law case theory, it is made so in Pennsylvania by direct mandate of the people expressed through its Constitution, where, by article X, sec. 1, of the Constitution of 1873 it is provided:

"The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public schools, wherein all the children of this Commonwealth above the age of six years may be educated, and shall appropriate at least one million dollars each year for that purpose."

It is generally held that school districts, when operating in a governmental capacity in the conduct of the school system as such, whether defined by the Constitution or so held to be acting by legal decision, are exempt from tort liability. See Annotation, 160 A. L. R. 7. A number of reasons are advanced to justify such exemption in all phases of school operations; first, the theory that the school district is an agent of the State and, therefore, is exempt from liability because the sovereign is exempt; second, the school district, formed for the limited and special purpose of carrying out the State's obligation to provide education for its citizens, is at the most a quasi-corporation without the so-called corporate or proprietary functions

recognized as appertaining to municipal corporations, such as cities and boroughs; third, that the doctrine of respondeat superior does not apply to school districts; fourth, that in the conduct of their business school districts administer funds appropriated solely to the business of education and, therefore, have no funds from which a tort liability could be satisfied.

Since 1854 at least, school districts in Pennsylvania have been designated as "bodies corporate". See section 18 of the Act of May 8, 1854, P. L. 617, an act entitled "For the regulation and continuance of a system of education by common schools". See also section 119 of the present School Code of May 18, 1911, P. L. 309, 24 PS §30. A school district may sue and be sued in its corporate name: School Code, sec. 123. It may have a corporate seal: School Code, sec. 124. It may accept devises and gifts in trust: School Code, sec. 126. It has all the necessary powers to enable it to carry out the provisions of the School Code: Section 119. It is said that in spite of the designation by the legislature of a school district as a body corporate, it is at the most a quasi-corporation.

In Wharton et al. v. The School Directors of Cass Township et al., 42 Pa. 358 (1862), it was said that (p. 363):

"School districts are not, strictly speaking, municipal corporations, for they have neither a common seal nor legislative powers, both of which are characteristic of such corporations. . . . They belong to that class of quasi-corporations to which counties and townships belong—exercising within a prescribed sphere many of the faculties of a corporation: and the directors are invested with various discretionary powers in execution of the school laws, for which they are responsible only to the people whose representatives they are."

But, under legislation now in force, school districts have a common seal and it is obvious that within their sphere of action they have legislative powers to such extent as may be necessary to implement the school laws in the management of school districts' affairs according to the peculiar conditions in the several districts. There appears to be no sound basis for the statement that a school district is not a corporation, whether it is called municipal or otherwise, for it is obviously an artificial person clothed by the legislature with specific authority to do certain acts without imposing individual liability therefor on either the directors or the members (citizens and taxpayers residing within the district) for the lawful conduct of its business.

The real question is whether, by whatever name the institution may be known, a school district can and does engage in corporate or proprietary actions as distinguished from governmental actions. Many of the authorities say that because of its peculiar relationship to the State, it cannot exercise any nongovernmental functions. See 160 A. L. R. 7. The only rational explanation for such a holding is that a school district in the performance of all its business is an agent of the State, the sovereign, and therefore is excused from any liability for tortious actions, because the "king can do no wrong", or, to translate it into our American concept, the State will not subject itself to liability except on its own terms and by its own permission. But it has been generally held in America, and in Pennsylvania in particular, that municipal corporations in the performance of certain types of functions cannot seek the protection of sovereignty while in the performance of other types of functions they may do so.

In Devere Ford v. Kendall Borough School District, 121 Pa. 543 (1888), Chief Justice Gordon expressed

himself somewhat vehemently as opposed in principle to the concept of municipal liability for the tortious conduct of corporate or proprietary activities, accepted it on the ground of stare decisis, but refused to extend the notion to school districts. He thought that to make school districts responsible for the misfeasance of their officers would, in many cases, prove injurious, if not destructive to the public welfare. But the theory of municipal liability for the torts of its servants and agents in nongovernmental activities is firmly fixed in our law: Honaman v. Philadelphia, supra, and cases cited therein.

We can see no reason in logic, nor in the law of Pennsylvania as expressed in our cases, why the same rule should not be applied to school districts. Distinctions between governmental and proprietary functions as applied to school districts may be harder to make than in the case of such municipal corporations as cities or boroughs, or even quasi-corporations, such as counties are recognized to be, because of the natural limited scope of operation of school districts, but, nevertheless, they can be made, a fact which certainly is recognized in the more recent cases dealing with school district liability for torts, such as Devlin, Exrx., v. Philadelphia School District, 337 Pa. 209 (1940); Carlo v. Scranton School District, 319 Pa. 417 (1935), where it was assumed in the Carlo case and specifically stated in the Devlin case, that the school districts, while "acting within the *legitimate* scope of their functions" were not liable for the negligence of its agents or employes.

The conduct of physical education, including intramural and interscholastic games, is certainly within the legitimate scope of school district educational activity and so ordinarily a governmental function: Galloway v. Prospect Park Borough School District,

331 Pa. 48 (1938) ; Ganaposki's Case, 332 Pa. 550 (1948).

Section 405 of the School Code requires the school directors in every district of the first and second class (Scranton is a second-class district), and permits school directors in districts of other classes, to adopt and enforce reasonable rules and regulations regarding the management, control or prohibition of exercises, athletics or games taken part in or played by any pupils as members of or in connection with any public school.

Section 401 of the code authorizes the school directors to equip and maintain, inter alia, gymnasiums and playgrounds.

But, is it within the legitimate scope of the functions of a school district in providing "for the maintenance and support of a thorough and efficient system of public schools" to operate, for the entertainment of the public, a spectacle attracting 10,000 patrons for pay and accompanied by the usual side line concessionaires characteristic of commercial sport exploitation? We think not. The only rational distinction between a governmental or a corporate and proprietary function, it seems to us, is the distinction of necessity, that is, a governmental function is one which is performed by some agency of government in pursuance of the duty of government to provide for the safety, health and welfare of its citizens. On the other hand, those functions are corporate or proprietary which are performed by such an agency for the convenience or comfort of the persons served by such an agency and which could as well be performed by private individuals if the agency chose not to perform them. Thus it is obvious that only the government can provide for public order by empowering policemen to preserve it. Hence, a municipality ought not to be subject to liability for the negligence of a policeman when engaged in his duty, be-

cause while so doing he is clothed with the protection of sovereignty. To use the present situation as an opposite illustration, it is obvious that while physical education and training in games may be considered a part of the school district's governmental business, because made so by the Constitution, it is equally obvious that any private promoter in the sports field could conduct a football game between opposing teams, school or otherwise, collect admission fees therefor, provide for seating accommodations and be responsible for the protection of patrons while in his park, at least to the extent of responsibility for failure to warn them of a dangerous condition. We can see no reason why a school district should not be equally responsible, for we consider that the arrangement for such a public spectacle, desirable and interesting as it may be, is nevertheless not necessary to the business of the school district of providing a thorough and efficient system of public schools and, therefore, not within the legitimate scope of its operation as a governmental agency.

This decision does not question either the desirability or the legality of such contests as the one which the public attended and at which plaintiff was hurt. What we do decide is that the promotion of such a contest for the enjoyment of spectators, on such a scale and for admission fees, is a corporate or proprietary activity and as such the district must assume the risks which accompany such activities and protect itself against such risks by sound methods of business management.

There are two arguments advanced against this position which we have not considered; one, that in the provision of an education for the pupils entitled thereto the State and its agencies are in reality operating a huge public charity and, therefore, its agencies are to be excused from tort liability for the same reasons that the operators of purely public charities have always been excused. We reject this position, for the reason

that the mandatory provisions of the Constitution of 1873 make the education of children a matter of right to all children and no longer a matter of charity or of governmental gratuity.

The other argument is that the school districts in the conduct of their business administer funds which are public moneys devoted to a specific charity and not divertable even indirectly to any other use. See Briegel v. Philadelphia, 135 Pa. 451; Ford v. School District, 121 Pa. 543. But, if the school district is liable and a judgment is obtained against it, the judgment may be collected according to the method prescribed by section 514 of the School Code, either from any unappropriated funds or if there be none such, then out of the first funds to be received by the school district, and collection under mandamus execution may be enforced by attachment on cause shown. Granted that liability can be established, it is unthinkable that a public agency should attempt to avoid it because the obligation was not budgeted in advance, or specifically provided for by law.

The preliminary objections to plaintiff's complaint are dismissed, defendant to answer over in 10 days.