[Civ. No. 5726. Third Appellate District.—May 17, 1937.]

BOARD OF EDUCATION OF THE CITY OF EUREKA et al., Respondents, v. VICTOR R. JEWETT, Appellant.

Clarence E. Rust for Appellant.

J. T. Fraser, District Attorney, and Delos A. Mace and A. G. Bradford, Deputies District Attorney, for Respondents.

HELD, J., *pro tem.*—Appellant was a teacher of ''Social Studies'' under the jurisdiction of respondent Board of Education, in the Eureka Junior High School in the City of Eureka, in this state, and held a permanent classification rating. On August 14, 1935, one Frank Miller filed with respondent board a document charging appellant with unprofessional conduct, evident unfitness for service and making seditious utterances. On August 15, 1935, respondent served upon appellant, a notice that at a meeting of the Board of Education held on the previous day a verified petition had been filed charging appellant with unprofessional conduct, and that on motion he had been dismissed as a teacher in the school. A copy of the ''School Law and Complaint'' ac- companied service of the notice. Thereafter, and with thirty days, appellant served upon respondent ''specific, tions and demand'', and within the same period, ''amended

specifications and demand''. In each, the appellant denied the jurisdiction of the board to make the order of dismissal, and demanded its immediate revocation. The amended document denied also the jurisdiction of the board to hold a hearing. Each document reserved all rights of appellant growing out of the alleged want of jurisdiction, and subject to such reservation, demanded a hearing upon the charges filed with the board. On September 26, 1935, the complaint was filed in this action, wherein plaintiff asks that the court inquire into the charges against defendant and appellant, and determine whether the same are true, and if so, whether they constitute sufficient grounds for dismissal. Following an extended hearing by the court, appellant was found guilty of unprofessional conduct, and judgment was entered authorizing respondent board to dismiss him from his position as a teacher in the junior high school in the city of Eureka. From that judgment, this appeal is prosecuted.

This proceeding was instituted in the superior court pursuant to section 5.654 of the School Code, as amended in 1935. (Stats. 1935, p. 1887.) In that section it is provided that when a teacher who has been served with notice of intention of the governing board to dismiss him, demands a hearing, the board may either rescind its action, or file a complaint in the superior court praying an inquiry into the truth of the charges, and to determine whether the same, if sustained, constitutes sufficient grounds for dismissal. Prior to the amendment of 1935 of section 5.654, the hearing, if one was demanded, was to be had before the governing board. Other provisions of the School Code dealing with the dismissal of teachers were amended in 1935, and all such amendments became effective on September 15, 1935. The proceedings leading up to the present action and culminating in a demand for a hearing were had prior to September 15, 1935, and the procedure prescribed by the former statute was adopted. The complaint herein was filed on September 26, 1935, and the hearing which followed was in accordance with section 5.654 as amended in 1935.

Certain sections of the School Code applicable here, as they existed prior to the amendments of 1935, and at the time of such of the proceedings herein as were had prior to September 15, 1935, may be noted. Section 5.650 (Stats. 1933, p. 1017), sets forth the grounds on which a permanent

teacher might be dismissed. These included, among others, unprofessional conduct, seditious utterances, and evident unfitness for service. Section 5.651 (Stats. 1931, p. 1395) prescribed the procedure immediately following the filing of charges, where the basis thereof is other than immoral conduct, and section 5.653 (Stats. 1933, p. 1018), where the charge was based on immoral conduct, criminal syndicalism, seditious utterances, or membership in a society advocating criminal syndicalism. Section 5.651, not having been amended in 1933, the provisions of section 5.653 govern where seditious utterances, criminal syndicalism and membership in a society advocating criminal syndicalism, are charged.

The charges against appellant filed with respondent board alleged unprofessional conduct, evident unfitness for service, and seditious utterances. As to seditious utterances, the procedure to be followed was that prescribed by section 5.653 as amended in 1933, and as to the charges of unprofessional conduct and evident unfitness for service, section 5.651 as enacted in 1931, governed. Where seditious utterances were charged, the board was required to suspend the teacher immediately and give him notice thereof, and that unless within thirty days he demanded a hearing, he would be dismissed. On the other hand, where the charges were unprofessional conduct and evident unfitness for service, the power of the governing board authorizes the giving of a notice to a teacher that he will be dismissed at the end of the then current school year unless a hearing be demanded.

Inasmuch as seditious utterances were included in the charges filed against appellant, it became the duty of respondent board to suspend appellant immediately, and to notify him of his right to a hearing. The notice given, however, was that appellant was dismissed. The board had power only to suspend. Accompanying the notice was a copy of the complaint filed with the board and a copy of the School Law. He was thus fully apprised of the extent of the power of the board and of his right to a hearing. That this was so is indicated by the fact that he did demand a hearing. No prejudice is shown to have resulted to appellant, notwithstanding the defect in the form of the notice. He was accorded a hearing as fully and completely as though the notice had been technically correct. This is not a case where there was an entire absence of notice; there was merely a de-

fect, and it was within the province of the trial court to determine whether there was a substantial compliance with the statute. As was said in *Beck* v. *Ransome-Crummey Co.*, 42 Cal. App. 674 [184 Pac. 431]: "If . . . there was not an entire omission of a statutory requirement, but merely a defect, a court may properly determine there has been or has not been a substantial compliance with the statute dependent upon the facts of the particular case. . . . This judgment of what is a substantial compliance with the statute is to be exercised in the first instance by the trial court. If the case is one where a requirement of the statute has not been entirely disregarded, its determination of the question of substantial compliance ought to be controlling in the absence of an abuse of discretion."

The trial court having found herein that the notice served on appellant was a substantial compliance with the statute, and no abuse of discretion appearing, the decision of the trial court on the question must control. Furthermore, appellant having participated in the hearing in the lower court, waived any defect in the notice. (*Haverstick* v. *Southern Pac. Co.*, 1 Cal. App. (2d) 605 [37 Pac. (2d) 146].)

It is contended also by appellant that the trial court was without jurisdiction for want of sufficient charges filed with the respondent board. The alleged insufficiency is claimed to arise out of the fact that the charges are made on information and belief, and the affidavit verifying the same was made in accordance with section 446 of the Code of Civil Procedure. It is contended that sections 5.651 and 5.653, which provide for written charges, duly signed and verified, "require that the statements be made within the personal knowledge of affiant". But those sections do not so provide. It has been held that charges filed under the State Civil Service Act (Deering's Gen. Laws, Act 1400), are sufficient if made on information and belief. (*Vadnais* v. *Department of Motor Vehicles*, 3 Cal. App. (2d) 562 [40 Pac. (2d) 559].) There is no reason apparent why that should not be the case here. The provision for a verification requires merely that what has been properly alleged be affirmed under oath. (*McCaffey etc. Co., Inc.*, v. *Bank of America*, 109 Cal. App. 415 [294 Pac. 45].)

We conclude that the trial court was vested with jurisdiction to inquire into the charges made against appellant,

to determine whether the same were true, and if true, whether they constituted sufficient grounds for dismissal of appellant.

The appellant was a teacher in the junior high school. Children who had completed the work of the sixth grade are eligible to enter that school. (School Code, sec. 3.250.) The pupils receiving instruction from appellant would therefore range in age from twelve years upward. That the children coming under the supervision and influence of a teacher in the junior high school are of an impressionable age must be conceded. To obtain his credentials appellant subscribed to an oath to support the Constitution and laws of the United States and of the state of California, and by precept and example to promote respect for the flag, and undivided allegiance to the government of the United States. (School Code, sec. 5.128.) Violation of the oath justifies a revocation of his credentials by the State Board of Education, and would, to say the least, constitute unprofessional conduct. In *Goldsmith* v. *Board of Education,* 66 Cal. App. 157 [225 Pac. 783], it was held that solicitation by a teacher of support for a candidate for the office of county superintendent of schools constituted unprofessional conduct.

The statement of appellant to one of his pupils that it was silly and foolish to salute the American flag is certainly not calculated to promote respect for our national emblem. His admission to the witness Jacobs that he had told his pupils that "Russia had the best government in the world, and that we had one of the worst", leads one to question appellant's fitness to instruct children of tender years. The same witness stated that appellant had said to him that Russia "always pays its debts, it is this country that doesn't pay its debts"; that the United States was "the aggressor in every war we have been in"; that "we were a bully amongst nations and took advantage of all the smaller nations". Appellant disapproved the attendance of his pupils at the cinema to view a patriotic moving picture; he distributed to his pupils, in the class room, pamphlets commenting on communism, and also circulated pamphlets concerning the case of Thomas J. Mooney, whom he described as a greater martyr than Abraham Lincoln; he told his pupils that he would rather be a "live coward than go to war". On another occasion he stated that if the United States became involved in war he "would have nothing to do with it"; that the

United States needed neither army nor navy. To some of his pupils, he spoke disparagingly of Abraham Lincoln. To others he decried religion. When accused by one pupil of being a communist, and by another of belonging to a communist club, he made no denial. Other teachers in the school testified that pupils coming from the class room of appellant, to theirs, were mentally disturbed by his teaching. That appellant was in correspondence with the office of the "Western Worker", a communist publication, is conceded by him, as well as that he was a subscriber to, and supporter of that publication. The appellant testified as a witness on his own behalf, but much of his testimony was evasive, particularly his explanation of the purpose of the payment to him in 1934, of certain moneys by direction of the State Bank of the U. S. S. R. in Moscow. Nor did he satisfactorily explain his visit with a woman representing herself to be an emissary of the Russian government.

From the foregoing recital of acts and conduct of appellant, his unfitness to be the teacher of children of impressionable age sufficiently appears without further statement of other similar acts and conduct on his part which are disclosed by the evidence. Waiving all other circumstances, his demeanor in the class room was in violation of the oath assumed by him to obtain his credentials entitling him to teach.

In *Allied Architects' Assn.* v. *Payne,* 192 Cal. 431 [221 Pac. 209], the court said: "It is settled beyond question that the promotion of patriotism, involving as it does, the sense of self-preservation, is not only a public purpose, but the most elemental of public purposes. The continuity of our governmental institutions is dependent in a large measure upon the perpetuation of a patriotic impulse which is but the willingness to sacrifice all for the ideas and the ideals which form the foundation stones of our public." By section 5.544 of the School Code, the people of California, speaking through the legislature, make it the duty of all teachers to endeavor to impress upon the minds of the pupils the principles of patriotism, and to train them up to a true comprehension of the duties and dignity of American citizenship. Throughout the School Code is manifest an intent on the part of the people of California to instill in school children a respect and reverence for our institutions. This purpose cannot be accomplished by acts and conduct such as those manifested by appellant. The liberality of our institutions

is such as to permit a teacher in our school to teach the nature of other forms of government, but there is a wide distinction between teaching and advocating.

The preservation of our nation depends on the patriotism of its people. Our School Code gives recognition to the principle that patriotism is to be instilled in the pupils attending our public schools. This purpose is not accomplished by the retention on our teaching staffs of instructors who entertain the beliefs held by appellant, and who seek to impress those beliefs upon their pupils. Appellant's offense is not his attitude toward our institutions, but rather his persistent efforts to enlist support for his anti-American views from his pupils.

Appellant seeks to justify his statements, acts and conduct in the class room by the contention that the same were in accord with certain text books furnished him by the school authorities as guides for instruction of his pupils. While it may be conceded that the respondent board may, on a further examination of those text books, believe itself warranted in discontinuing their use, nevertheless, the misbehavior of appellant exceeded anything that might reasonably be held justified by those guides.

The order striking the cross-complaint was proper. Section 5.654 of the School Code limits the extent of a proceeding such as the present one, to a determination whether the charges are true, and if so found, whether they justify dismissal. No affirmative relief to appellant is provided for, except restoration and payment of salary, and that would follow a judgment in his favor on the issues framed by the complaint and answer.

Whether suspension of the appellant by the respondent pending the hearing of charges, was authorized, in view of the finding of the trial court that appellant was guilty only of unprofessional conduct, is not involved here. Nor is it necessary to decide whether, for the offense of which he was found guilty, the appellant might have been dismissed prior to the end of the then-current school year on June 30, 1936. Those questions can only arise in a case where appellant might seek recovery of salary for the time between the suspension and the end of the school year.

The judgment is affirmed.

Thompson, Acting P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 15, 1937.