## Ganaposki's Case.

Argued September 27, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Frank Whitsett,* of *Polkabla & Whitsett,* with him *James Gregg,* of *Gregg & Copeland,* and *W. J. McDowell,* for appellant.

*Thomas H. Armstrong,* for appellee, was not heard.

OPINION BY MR. CHIEF JUSTICE KEPHART, December 5, 1938:

Appellant was for many years employed by appellee school board as a teacher. He initially taught history, civics and physical education, which included coaching in athletics. Under his present contract he was instructor in physical education under which he coached football and basketball. When relieved of his duties as football coach he refused to continue coaching basketball.

Because he refused to perform regularly assigned duties under the School Code, after notice and hearing he was not reëlected to the teaching staff. The action of the board was sustained by the court of common pleas on appeal.

Appellant here contends that under the proper construction of the word "teach" as used in his contract, appellee was without authority under the school laws to refuse him reëlection solely for the nonperformance of *coaching* duties. The sole question therefore is whether the word "teach" can be construed to include coaching duties.

Appellant's contract of employment is in the standard form prescribed by the School Code of 1911, section 1205, as amended, prior to the Act of April 6, 1937, P. L. 213. It provides that appellant shall teach "under the authority of the said board . . . and subject to the supervision and authority of the properly authorized superintendent of schools. . . ."[1] Although the record does not include appellant's certificate, it does disclose that he was qualified to instruct in history, civics and physical education.

Appellant insists that since his written contract was to "teach," making no reference to coaching, he cannot be dismissed solely for his refusal to perform coaching duties so long as his services as an instructor in physical education are otherwise satisfactory. The statutory form of contract does not define teaching duties or those to which a teacher may be assigned. "Teach" as thus used has a comprehensive as well as a restricted meaning. The School Code restricts its meaning to instruction within the qualifications expressed in the teacher's

---

[1] In the form of contract provided by the Act of 1937, in addition to the superintendent, the "supervising principal" supervises and controls, under the authority of the board, assignments to teach.

certificate;[2] but in a broad sense, it refers to general instruction within the fields certified, including all incidents and subdivisions thereof. Within these qualifications, the discretion of the school authorities is absolute, under the contract, to assign the teacher regardless of prior understandings before his contract was entered into. Neither the teacher nor the board, nor both combined, can circumvent by contract, or otherwise, the statutory right of the board to assign teachers or to administer the school under their control. The Code thus reserves to the board the power to assign the teacher to any duties for which he is properly qualified under his teacher's certificate.[3]

There can be no doubt that a comprehensive definition of "teaching" physical education embraces all fields of athletics, including coaching football and basketball. The Code does not permit the certification of teachers in specific fields of athletic instruction, nor is there any provision in the law for the employment of a "coach" who has no teaching certificate. Such an employee would not be a "professional employe" within the meaning of section 1 of the Teachers' Tenure Act of 1937.[4]

---

[2] Section 1301 of the School Code provides:

"Every teacher in the public schools of this Commonwealth must hold a provisional, professional or State certificate, which shall set forth the branches which its holder is entitled to teach, and which shall be isued as herein provided; but no teacher shall teach, in any public school in this Commonwealth, any branch which he has not been properly certificated to teach."

[3] Also, section 404 of the Code provides:

"The board of school directors . . . may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs and the conduct and deportment of all superintendents, teachers, and other appointees or employees during the time they are engaged in their duties to the district. . . ."

[4] Act of May 6, 1937, P. L. 213, section 1:

"The term 'professional employe,' as used in this act, shall include teachers, supervisors, supervising principals, principals, di-

Various sections of our school law recognize the scope of physical training, or education; it has for many years formed a definite and integral part of the curriculum of the public schools.[5] Section 1607 of the Code, as amended,[6] includes, in the course of study prescribed for the elementary public schools of the Commonwealth, instruction in "health, including physical training," as one of the required branches. For high schools, the State Council of Education determines the subjects to be taught based on statutory authority.

Physical training includes organized sports and athletic exercises. Athletics are important to the moral, physical and mental development of students. In *Galloway v. Prospect Pk. Boro. Sch. Dist.*, 331 Pa. 48, at p. 51, Mr. Justice STERN speaking for this Court stated: "Physical education is as much a part of the school cur-

rectors of vocational education, dental hygienists, visiting teachers, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists, school nurses who are certified as teachers and any regular full-time employe of a school district who is duly certified as a teacher."

[5] The Act of March 8, 1901, P. L. 49, required that "physical culture, by a regular and progressive course of calisthenics, shall be included in the branches of study now required by law to be taught in the public schools of this Commonwealth." Section 2 specifically referred to instructors of physical culture as "teachers." See *Koch v. Mt. Oliver School District*, 60 Pitts. L. J. 191.

[6] Section 1607 of the Act of 1911 as amended by the Acts of May 29, 1931, P. L. 243, section 37, and May 20, 1937, P. L. 732, section 1, provides:

"In every elementary public and private school, established and maintained in this Commonwealth, the following subjects shall be taught, in the English language and from English texts: English, including spelling, reading and writing, arithmetic, geography, the history of the United States and of Pennsylvania, civics, including loyalty to the State and National Government, safety education, and the humane treatment of birds and animals, health, including physical training and physiology, music and art. Other subjects shall be taught in the public elementary schools and also in the public high schools as may be designated or approved by the State Board of Education. . . ."

riculum as are subjects of intellectual study, and athletic supplies, therefore, are as 'necessary for school use' as maps, globes, and similar objects. It is not the spirit of our public school system that only children with financial means to purchase their own supplies should have the opportunity of participating in school games and athletic sports." The School Code, in section 405, recognizes the inclusion of organized sports in the school program by entrusting to the board the management and control of exercises, athletics and games played by the pupils.[7]

Appellant was a qualified instructor in physical education and was assigned to coaching duties. It was a proper assignment, within the power of the school authorities. When a professional employee is regularly employed to "teach," thereafter he may be assigned such teaching duties for which he is qualified as the board may direct, and if he refuses to obey such instruction he is guilty of "wilful and persistent negligence" for which he may be dismissed. ". . . disobedience of reasonable orders of the Board of Education is an act of negligence": *Lyndall v. Board of Public Education*, 10 Pa. Dist. 665 (opinion by ARNOLD, P. J.), affirmed 19 Pa. Superior Ct. 232. Such conduct may also be classed as "persistent and wilful violation of the school laws." The School Code provides that he must "teach" under the authority of the board; the refusal to do so is a di-

---

[7] "The board of school directors . . . may, prescribe, adopt, and enforce such reasonable rules and regulations as it may deem proper, regarding the management, control, or prohibition of exercises, athletics, or games of any kind, taken part in or played by any pupils as members of or in connection with any public school. . . ."

Section 401 authorizes the school board to acquire and maintain playgrounds and gymnasiums as an integral part of the school system. And see *School Expenditures for Athletics*, 27 Pa. D. & C. 325 (Op. Atty. Gen.); *Ristine et al. v. School Dist.*, 26 Pa. D. & C. 655, 661.

rect violation of the Code and his contract: *Ditty v. Weiss et al.,* one of the *Teachers' Tenure Act Cases,* 329 Pa. 213, 237, cited by appellant, recognizes that coaching may be assigned to a teacher. That case, however, did not involve the refusal of a teacher to perform such assigned duties and does not apply.

There was sufficient evidence that appellant was assigned, under his contract, to the duties which he refused and wilfully neglected to perform, and the school board acted properly in dismissing him after notice and hearing. No question was raised as to the right of appeal.

Decree affirmed at appellant's costs.