[L. A. No. 22343. In Bank. Oct. 2, 1953.]

BOARD OF EDUCATION OF THE CITY OF LOS AN-
GELES, Respondent, v. IONE L. DRESDEN SWAN,
Appellant.

Owen J. Brady, Alexander H. Schullman and Richard L. Rykoff for Appellant.

Harold W. Kennedy, County Counsel, Wm. E. Lamoreaux and Clarence H. Langstaff, Deputy County Counsel, for Respondent.

SPENCE, J.—This is an appeal from a judgment permitting plaintiff to dismiss defendant and to terminate her employment as a permanent teacher of the Los Angeles City

School District. Defendant urges these principal points as grounds for reversal: (1) insufficiency of the evidence to sustain the findings and judgment permitting her dismissal; and (2) error in the trial court's striking of her special defenses relating to alleged improper motives as the basis for plaintiff's institution of the dismissal proceedings. There is no merit to her position in view of the record and the governing statutory law.

For more than 29 years defendant had been employed by the school district as a teacher and principal, and during the period here involved she was serving in the latter capacity for the Wilshire Crest School in Los Angeles. On April 26, 1951, charges were formulated by plaintiff alleging that causes existed for her dismissal. Written notice of plaintiff's intention to dismiss defendant, together with copy of the charges, was served upon her. Defendant thereupon demanded a hearing and plaintiff, as authorized by statute, elected to file this action asking the court to inquire into the charges, determine whether or not they were true, and if so, whether they constituted sufficient grounds for her dismissal. (Ed. Code, § 13529.) The court found the following charges to be true:

(1) About March 13, 1951, before a regularly scheduled meeting of the Wilshire Crest Parent Teachers Association, defendant made derogatory statements concerning the superintendent of schools and criticized the board of education for bringing him to Los Angeles.

(2) At the same meeting defendant stated that she had been called before the Los Angeles City Board of Education and had "spit in their faces."

(3) Defendant failed and refused to report for teaching assignments on April 9, 1951, and April 23, 1951, when instructed to do so by the superintendent of schools acting under order of the board of education.

(4) During the school year 1949-1950 defendant requested a teacher in her school to join a teachers' union in violation of the school district's rule.

(5) Defendant caused to be paid to the Wilshire Crest Parent Teachers Association the total proceeds received from a carnival jointly presented by it and the student body under a permit providing for an equal division of the proceeds between the two groups; and contrary to established rules and policies, she accepted from the Parent Teachers Association nine phonographs purchased for the school from the carnival

proceeds without obtaining the approval of the student body finance section of plaintiff's administrative office.

(6) Defendant failed to attend meetings called by the superintendent of schools and his assistants to aid school principals in their work, although such attendance was required under the school district's rules.

(7) During the school year 1950-1951 defendant dismissed each day approximately 50 children of the first and second grades a few minutes before 2 o'clock in the afternoon, although such practice was expressly disapproved by the assistant superintendent of schools and contrary to the stated closing hour of 2 p. m. as provided in the prescribed rules.

(8) In February, 1950, defendant issued a written bulletin to the teachers in her school suggesting that they have duplicate classroom keys made to take home with them, in violation of the rule providing that classroom keys should be left in the principal's office.

(9) At the above-mentioned Parent Teachers Association meeting of March 13, 1951, defendant called the superintendent of schools and other school administrators "henchmen" and the board of education office "The Little Kremlin"; and immediately upon adjournment of the Parent Teachers Association meeting defendant permitted the persons present to assemble in a citizens' meeting in her school without the necessary permit as required by plaintiff's rules regulating the holding of public meetings in school buildings.

From such findings the court concluded that there was cause for defendant's dismissal on these grounds: (1) unprofessional conduct; (2) evident unfitness for service; and (3) persistent violation of or refusal to obey the school laws of the state and reasonable regulations prescribed for the government of the public schools by the State Board of Education and by the Board of Education of the City of Los Angeles. (Ed. Code, § 13521.) Accordingly, judgment was entered authorizing defendant's dismissal. (Ed. Code, § 13552.)

As a preliminary matter, defendant contends that it was error to include the same charge under more than one cause for dismissal. For example, plaintiff included the charge of defendant's continued refusal to report for a teaching assignment under each of the three above causes for dismissal. Considering this point here despite defendant's failure to make it a ground of demurrer to the complaint (Ed. Code, § 13531), there appears to be nothing in the relevant code

provisions which would prohibit such practice in formulating the accusatory pleading. (Ed. Code, § 13521 et seq.) ▮ Manifestly, a particular act or omission of a teacher may constitute unprofessional conduct, evident unfitness for service, and a persistent violation of or refusal to obey prescribed rules and regulations. Defendant's citation of *Fresno City High School Dist.* v. *De Caristo*, 33 Cal.App.2d 666 [92 P.2d 668], does not strengthen her position. There it was merely said that each of the causes for removal stated in the code refers to "acts or omissions not necessarily included in the others." (P. 672.) That is not a statement that the acts or omissions charged may not be included in one or more causes for removal.

No useful purpose would be served in detailing the testimony in the record inasmuch as defendant has conceded that "there was certain evidence going to substantiate the truth of the respective charges against her." Briefly, it need only be said that there indisputably appears to have been a long drawn-out course of conduct on the part of defendant which produced serious friction with plaintiff as the result of her insubordination, her refusal to conform to the instructions and requirements of her superiors, and her continued violation of the rules prescribed by the school district. As principal considerations, she made derogatory statements and used undignified language with reference to school administrative officers and in describing her attitude to members of plaintiff board, she continuously disregarded rules requiring her attendance at meetings called to assist principals in their work, she patently suggested to the teachers in her school violation of the rule providing that keys to classrooms be left in the office of the principal, and she refused to accept two teaching assignments. Nevertheless, defendant maintains that giving "the fullest credibility" to these facts, they are not sufficient cause for her dismissal.

▮ The refusal of a teacher to accept an assignment which the school authorities have the power to make constitutes a violation of school laws as ground for dismissal. (47 Am.Jur. § 139, p. 396; *Appeal of Ganaposki* (1938), 332 Pa. 550 [2 A.2d 742, 744-745, 119 A.L.R. 815]; *Commonwealth ex rel. Wesenberg* v. *School Dist. of City of Bethlehem* (1942), 148 Pa.Super. 250 [24 A.2d 673, 676]; *Consolidated School Dist. No. 4 Bryan County* v. *Millis* (1943), 192 Okla. 687 [139 P.2d 183, 185]; *Hamberlin* v. *Tangipahoa Parish School Board* (1946), 210 La. 483 [27 So.2d 307, 309].)

■ The wilful refusal of a teacher to obey the reasonable rules and regulations of the employing board of education is insubordination. (*Harrison* v. *State Board of Education* (1946), 134 N.J.L. 502 [48 A.2d 579, 580-581]; *State ex rel. Steele* v. *Board of Education of Fairfield* (1949), 252 Ala. 254 [40 So.2d 689, 695].) A teacher, and more particularly a principal, in the public school system is regarded by the public and pupils in the light of an exemplar, whose words and actions are likely to be followed by the children coming under her care and protection. (Voorhees, The Law of Public Schools, § 62, p. 136.) ■ In this connection the following language used in *Johnson* v. *Taft School Dist.*, 19 Cal.App. 2d 405, at page 408 [65 P.2d 912], is pertinent: "A board of education is entrusted with the conduct of the schools under its jurisdiction, their standards of education, and the moral, mental and physical welfare of the pupils during school hours. An important part of the education of any child is the instilling of a proper respect for authority and obedience to necessary discipline. Lessons are learned from example as well as from precept. The example of a teacher who is continually insubordinate and who refuses to recognize constituted authority may seriously affect the discipline in a school, impair its efficiency, and teach children lessons they should not learn. Such conduct may unfit a teacher for service in a school even though her other qualifications may be sufficient. 'Book learning' is only a phase of the important lessons a child should learn in a school." Within these principles, it cannot be said that the charges found to be true do not warrant defendant's dismissal. (See *Board of Education* v. *Jewett*, 21 Cal.App.2d 64, 72 [68 P.2d 404].)

Defendant argues that the court erred in concluding that she was guilty of unprofessional conduct as a ground for dismissal "where there [was] no evidence introduced as to what constitutes professional or unprofessional conduct." In support of her position defendant maintains that the decided cases furnish no basis for a conclusion of unprofessional conduct here; that the cases where a teacher has been held guilty of unprofessional conduct involved acts of a teacher in the presence of his pupils (*Goldsmith* v. *Board of Education*, 66 Cal.App. 157 [225 P. 783]; *Alexander* v. *Manton J. U. School Dist.*, 82 Cal.App. 330 [255 P. 516]; *Gaderer* v. *Grossmont Union H. S. Dist.*, 124 Cal.App. 686 [13 P. 401]; and *Board of Education* v. *Jewett, supra,* 21 Cal.App.2d 64); that what constitutes unprofessional conduct is not a matter

of common knowledge; and that the matter is not one subject to judicial notice by the court. There is no merit to defendant's position under the record and settled legal principles.

The phrase "unprofessional conduct," as used in the Education Code, is to be construed according to its common and approved usage, having regard for the context in which the Legislature used it. (Ed. Code, § 10; 23 Cal.Jur., § 122, p. 745.) The word "unprofessional" is a relative expression without technical meaning or arbitrary connotation. "Unprofessional conduct" is defined in 66 Corpus Juris, p. 55, as "that which violates the rules or ethical code of a profession or such conduct which is unbecoming a member of a profession in good standing." Thus it has been held that the violation of a teacher's oath as prescribed by the school code justified revocation of his credentials and constituted "unprofessional conduct" within the meaning of the statutory provisions governing dismissals. (*Board of Education* v. *Jewett, supra,* 21 Cal.App.2d 64, 70.) Conduct which produced serious friction in the school and showed the teacher's insubordination and refusal to conform to the instructions and requirements of her superiors was held "unprofessional conduct." (*Johnson* v. *Taft School Dist., supra,* 19 Cal.App. 2d 405, 407.) The taking of a leave of absence by a teacher without the consent of the school board in violation of its rule was adjudged "unprofessional conduct." (*Evard* v. *Board of Education,* 64 Cal.App.2d 745, 751 [149 P.2d 413].)

In *Goldsmith* v. *Board of Education, supra,* 66 Cal.App. 157, it was held that a teacher advocating before his class the election of a particular candidate for the office of county superintendent of schools was guilty of "unprofessional conduct." The fact that the term "unprofessional conduct" is not defined by statute authorizing the dismissal of a teacher (Ed. Code, § 13521) does not render it void for uncertainty. As was said in the Goldsmith case at page 168: ". . . the calling [of a teacher] is so intimate, its duties so delicate, the things in which a teacher might prove unworthy or would fail are so numerous that they are incapable of enumeration in any legislative enactment . . . the teacher is entrusted with the custody of children and their high preparation for useful life. His habits, his speech, his good name, his cleanliness, the wisdom and propriety of his unofficial utterances, his associations, all are involved. His ability to inspire children and to govern them, his power as a teacher,

and the character for which he stands are matters of major concern in a teacher's selection and retention. How can all of these things be provided for and offenses against them be particularly specified in a single statute?" It was further said at page 172: "No one has a natural or inherent right to teach in a public school" and the Legislature "for reasons of public policy" may "make the right to teach in any particular school subject to a broad discretion in the school authorities to dismiss for causes which come within very general designations." We therefore conclude that the facts found were ample to support the determination of the trial court that defendant had been guilty of "unprofessional conduct" as the term is generally understood in relation to the "professional proprieties of a teacher's employment." (*Goldsmith* v. *Board of Education, supra*, p. 169.)

Defendant further contends that the court erred in striking out the three special defenses raised in her answer and in refusing to admit evidence material to their establishment. Those defenses were: (1) the instructions to defendant to report for teaching assignments were not made in good faith; (2) her dismissal was not for the causes listed in the charges but because she had testified before the grand jury of Los Angeles County concerning plaintiff board, its members and employees, and had given stories covering her testimony to the press, private groups, and various interested individuals; and (3) her dismissal was part of plaintiff's calculated plan to remove her from her means of livelihood and deprive her of her right of free speech. In this regard defendant insists that the charges filed against her were merely a camouflage or "smoke screen" for plaintiff's real purpose in wishing to "get even" with her because of her public criticism of the board members.

But this is not a case where a claim of error is based upon the failure of a trial court to admit evidence of the motives of a witness for the purpose of impeachment. (27 Cal.Jur., § 96 et seq., p. 122 et seq.) Rather defendant claims that despite the truth of the serious charges brought against her as found by the trial court, she should have been permitted to show the alleged motives of the members of the board, regardless of whether any member became a witness on the trial, presumably upon the theory that a showing of the alleged motives would have had the effect of completely exonerating defendant from such charges. Neither reason nor authority sustains defendant's contention.

Defendant's alleged special defenses did not concern matters which would tend to excuse the acts or omissions charged.
 The plaintiff board had the unquestioned legal right to institute proceedings looking toward defendant's dismissal; and it is well settled that where there is a legal right to do a particular act, the motive which prompted the act is immaterial. (*Neuwald* v. *Brock,* 12 Cal.2d 662, 675-676 [86 P.2d 1047]; *Monahan* v. *Department of Water & Power,* 48 Cal.App.2d 746, 754 [120 P.2d 730].) Therefore an inquiry into extraneous facts to determine possible improper motives on the part of plaintiff would not be justified. The case of *Hanley* v. *Murphy,* 40 Cal.2d 572 [255 P.2d 1], is clearly distinguishable. There the superior officer acted without regard for the prescribed civil service rules, and his alleged bad faith therefore became a material consideration in determining the aggrieved employee's rights.

 Likewise defendant unavailingly seeks to file now as additional evidence the minutes of plaintiff's "secret" meeting held on February 1, 1951. She notes that these minutes were not transcribed and available until October 29, 1951 (almost two months after conclusion of the trial), and that they show that she was at that time threatened with dismissal charges if she did not turn over to plaintiff evidence procured by her in alleged substantiation of her grand jury testimony. She also claims that plaintiff's counsel was guilty of prejudicial misconduct in failing to produce these minutes since they allegedly establish that defendant's dismissal was ordered by plaintiff in bad faith and as a punitive, retaliatory measure. But such matters only go to the motives of plaintiff and are wholly immaterial to the issue of the truth or falsity of plaintiff's charges as ground for defendant's dismissal. In this action plaintiff, in effect, acted as the prosecutor in initiating the charges and filing the complaint, and having proceeded in strict compliance with its authority under the law, its motives were of no consequence. (*Neuwald* v. *Brock,* supra, 12 Cal.2d 662, 675-676.)

Defendant argues that after her years of service as a principal, she was not obliged to accept, without a hearing, teaching assignments from the superintendent of schools acting under plaintiff's order. But so far as defendant's demotion from the position of principal to teacher was concerned, plaintiff acted within its authority. Principals do not secure tenure in that capacity (Ed. Code, §§ 13088-13089), and the governing board may cancel their contracts as

principals at any time, subject, of course, to a possible judgment for damages in an action at law in the event the board fails to justify the dismissal of the principal from such position. (*Griffin* v. *Los Angeles City High School Dist.*, 53 Cal. App.2d 350, 351 [127 P.2d 939].) Having no tenure in her employment as a principal, defendant was indisputably guilty of insubordination in declining to accept the teaching assignment and was subject to dismissal.

Nor can defendant prevail in her claim that affirmance of her dismissal infringes upon the constitutional guarantee of her freedom of speech, in that she thereby is denied the right to criticize her superiors upon pain of losing her position. (U.S. Const., amends. I and XIV; Cal. Const., art. I, § 9.) One employed in public service does not have a constitutional right to such employment and is subject to reasonable supervision and restriction by the authorized governmental body or officer to the end that proper discipline may be maintained, and that activities among the employees may not be allowed to disrupt or impair the public service. (*Christal* v. *Police Commission*, 33 Cal.App.2d 564, 569 [92 P.2d 416]; *City of Los Angeles* v. *Los Angeles Bldg. & Const. Trades Council*, 94 Cal.App.2d 36, 48-49 [210 P.2d 305].) Because of this dominant public interest, the exercise of such control over the public employee is not only a right but is a duty, and in the discharge thereof a wide discretion is allowed, which will not be disturbed until the point of illegality is reached. (*Hayman* v. *City of Los Angeles*, 17 Cal.App.2d 674, 679 [62 P.2d 1047].)

Plaintiff had the right to require obedience to the rules reasonably promulgated by it as a condition to holding the office of teacher. There are few employments for hire, either public or private, in which the employee does not agree to abide by the rules prescribed by the employer, provided such rules are lawful. Here the court has resolved from conflicting evidence the sufficiency of plaintiff's charges against defendant to justify her dismissal, and such determination will not be disturbed. (*Fidler* v. *Board of Trustees*, 112 Cal.App. 296, 312 [296 P. 912].)

At the beginning of the trial the court, on motion of plaintiff, dismissed certain of the charges filed against defendant. She claims that she was thereby prejudiced because the dismissed charges "could not be substantiated by even an iota of evidence" and she was deprived of the opportunity to show that all the specific charges were groundless, serving

merely as a "screen of smoke" for the real reason of her dismissal. She argues that according to the prescribed statutory procedure, the trial court must inquire into the truth and sufficiency of the charges set forth in the complaint and previously served upon her as part of the notice to dismiss, rather than proceed with a hearing of a substantial lesser number of charges. (Ed. Code, § 13529.) There is nothing in the record which would sustain the validity of defendant's objection to being tried on a reduced number of charges. The cited statute does not purport to limit the trial court's exercise of discretion in settling the issues between the parties as a means of expediting the trial procedure. Accordingly, defendant's position cannot be sustained.

 The judgment determining that the board may dismiss defendant is not to be deemed a matter of direction or compulsion, but it is permissive only. (Ed. Code, § 13552.) Therefore the present board may or may not dismiss defendant as it sees fit.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

SCHAUER, J., Concurring and Dissenting.—I concur in the judgment and generally in the reasoning of the majority opinion but I do not agree that *Hanley* v. *Murphy* (1953), 40 Cal.2d 572, 582 [255 P.2d 1], "is clearly [or tenably] distinguishable." This case, I think, follows the law whereas *Hanley* v. *Murphy* does not and should be overruled.

Appellant's petition for a rehearing was denied October 29, 1953.