Filed 11/5/15  Galland v. Governing Bd. of the Los Angeles Unif. School Dist. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GABRIEL GALLAND,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>GOVERNING BOARD OF THE LOS ANGELES UNIFIED SCHOOL DISTRICT et al.<br><br>      Defendants and Respondents. | B258018<br><br>(Los Angeles County<br>Super. Ct. No. BS145931) |

APPEAL from a judgment of the Superior Court of Los Angeles County. James C. Chalfant, Judge.  Affirmed.

Ronald C. Lapekas for Plaintiff and Appellant.

Bergman Dacey Goldsmith, Gregory M. Bergman, Michele M. Goldsmith, and Mark W. Waterman for Defendants and Respondents.

\*      \*      \*

A public school district initiated administrative dismissal proceedings against one of its teachers. That teacher moved to dismiss those proceedings because the charges against him were not properly "verified"; because he was suspended without pay before the evidentiary hearing on the charges; and because the "immoral conduct" charge is unconstitutionally vague. The administrative tribunal rejected the teacher's challenges, and so did the trial court when the teacher subsequently filed a writ. We also conclude that the administrative proceedings were conducted appropriately and constitutionally. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Alleged Misconduct

Gabriel Galland (plaintiff) was working for the Los Angeles Unified School District (the district) as a permanent certificated teacher in 2012. The district received reports that plaintiff had engaged in several acts of misconduct during 2012. In January 2012, he was "disrespectful" and "aggressive" when addressing the assistant principal of his school. In April and May 2012, he told his entire class that another teacher was a "mija" who should be selling tamales; told the class that they have no future and will amount to nothing; told one student that his future entailed "selling oranges"; told another student that he was a "shit" who would never amount to anything because he is black; and made gorilla noises after asking a black student to leave the classroom. In August 2012, he put his finger in a student's face and yelled. In September 2012, he pushed and yelled at a student using profanity; grabbed and pushed another student; and in the course of kicking a student out of class, pushed that student in the chest and argued with him in view of the class.

## II.     Investigation and Initiation of Disciplinary Process

School administrators met with plaintiff in January, May and November 2012 to discuss the incidents and to give plaintiff the opportunity to respond.[1]

On March 5, 2013, the district served plaintiff with a notice of unsatisfactory acts and with a notice of suspension, both of which expressly referred to the August and September 2012 incidents, and which incorporated by reference the incidents memorialized at the earlier meetings.  Plaintiff denied the charges.

In March and April 2013, the district's administrator of operations sent plaintiff four letters attempting to set up a meeting at which plaintiff could "present any statements or documents on [his] own behalf" to assist the administrator in deciding whether or not to recommend that the district's Board of Education (governing board) move forward with the dismissal.  Each of those letters "[a]lternatively" advised plaintiff that "if [he] wish[ed] to resign," he could fill out an attached resignation form and that any resignation would be "forwarded to the Board of Education instead of the recommended discipline."  Plaintiff and his representative ultimately met with the administrator on April 22, 2013.  After hearing from plaintiff, the administrator decided to recommend dismissal to the governing board.

On September 27, 2013, the district's Chief Human Resources Officer filed a statement of charges with the board.  The statement of charges listed five different "causes" (or statutory bases) for dismissing plaintiff, two of which also authorized his immediate suspension without pay.  It also enumerated all eleven incidents from January through September 2012.  The line above the officer's signature stated:  "The undersigned verifies on information and belief that the foregoing Charges are true and correct."  A few weeks later, the governing board met in closed session and voted that good cause existed for plaintiff's dismissal and to suspend plaintiff without pay.

---

[1]     Plaintiff did not include the memoranda that memorialized the January and May meetings, but the record indicates that these meetings occurred and were memorialized.

3

### III. Hearing On Disciplinary Charges

The governing board provided plaintiff notice of its action in a letter dated October 9, 2013, and informed him that he had 30 days to request an evidentiary hearing before the Commission on Professional Competence (commission) contesting the charges. Plaintiff requested a hearing. The district's Chief Human Resources Officer thereafter filed an "accusation" against plaintiff that detailed the same causes and charges set forth in the initial statement of charges.

Plaintiff then filed a motion to dismiss the charges on the grounds that (1) the statement of charges was not properly verified, and (2) he was not accorded due process prior to being suspended without pay. The commission denied the motion to dismiss.

### IV. Litigation

Plaintiff filed a petition for writ of mandate in the Los Angeles County Superior Court. In the operative first amended petition, plaintiff alleged that the dismissal proceedings were defective for the same reasons raised in his motion to dismiss, and additionally because Education Code section 44939[2] is unconstitutionally vague. Plaintiff thereafter filed an ex parte application for a peremptory writ specifically challenging the commission's denial of his motion to dismiss.

The trial court denied plaintiff's application and "denied" the petition "on the merits" as well. Plaintiff did not request a statement of decision.

After the trial court entered judgment, plaintiff timely appealed.[3]

---

[2] Unless otherwise indicated, all further statutory references are to the Education Code in effect through December 31, 2014 (prior to the amendments of Stats. 2014, c. 55 (A.B.215), § 3, eff. Jan. 1, 2015).

[3] In his reply brief, plaintiff suggests that the district's appearance as a respondent on appeal is insufficient because he is challenging the actions of the governing board and the commission. For purposes of administrative discipline, however, these entities function as one. The commission is the governing board's final decision maker on issues of employee discipline once its procedures are invoked (§ 44944, subd. (c)(4)), and the governing board is the district's decision-making body (§ 35010, subd. (a)).

4

**DISCUSSION**

Plaintiff makes two sets of arguments on appeal: (1) the governing board (and hence the commission) lacked subject matter jurisdiction over his disciplinary proceeding because the statement of charges and accusation were not signed under "penalty of perjury"; and (2) the proceeding violated his constitutional rights to due process because (a) he was not accorded meaningful predeprivation review of his immediate suspension without pay, in violation of *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*), and (b) the "immoral" conduct charge is unconstitutionally vague on its face and as applied.

Although a trial court engaging in writ review of administrative proceedings reviews both the evidence and the law regarding those proceedings de novo (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 840 [questions of law]; Code Civ. Proc., § 1094.5 [evidence]; *San Diego Unified School Dist. v. Commission on Professional Competence* (2011) 194 Cal.App.4th 1454, 1461 [evidence]), our review is more deferential. We also review questions of law such as questions of statutory construction and constitutional interpretation de novo (*Donahue Schriber Realty Group, Inc v. Nu Creation Outreach* (2014) 232 Cal.App.4th 1171, 1176), but review the trial court's factual findings for substantial evidence (*DeYoung v. Commission on Professional Competence* (2014) 228 Cal.App.4th 568, 574 (*DeYoung*)). Under substantial evidence review, we resolve all conflicts and draw all reasonable inferences in favor of the trial court's findings. (*Ibid.*)

I.      **Overview of Administrative Review Process**

A permanent certificated public school teacher has a vested property right in his or her job and "'may not be deprived of it without due process of law.'" (*DeYoung*, *supra*, 228 Cal.App.4th at p. 574, quoting *Raven v. Oakland Unified School Dist.* (1989) 213 Cal.App.3d 1347, 1357.) The Education Code sets forth the general procedural

5

requirements, including administrative review, that must precede any dismissal or suspension.[4] (See § 44932 et seq.; *Shields v. Poway Unified School Dist.* (1998) 63 Cal.App.4th 955, 958 (*Shields*).)

The statutes start from the premise that a teacher may be suspended or dismissed only for "cause." (§§ 44932, subd. (a) [enumerating 11 different causes], 44933 [allowing for dismissal or suspension on other, nonenumerated grounds]; *Shields*, *supra*, 63 Cal.App.4th at p. 958.) The process to suspend or dismiss a teacher is initiated in one of two ways: (1) "written charges, duly signed and verified by the person filing them," may be filed with the school district's governing board; or (2) the governing board itself can "formulate[]" written charges. (§ 44934.) In either case, the written statement of charges must set forth (1) the statutory grounds for suspension or dismissal, and (2) "specify instances of behavior and the acts or omissions constituting the charge." (*Ibid.*)

The governing board then votes on whether to suspend or dismiss the teacher based upon the statement of charges. (§ 44934; *Kolter v. Commission on Professional Competence* (2009) 170 Cal.App.4th 1346, 1349.) If the charges involve "unprofessional conduct," the board cannot vote until the district has given the teacher a 45-day "opportunity to correct his or her faults." (§ 44938, subd. (a); *Blake v. Commission on Professional Competence* (1989) 212 Cal.App.3d 513, 517.)[5] The board may also vote to immediately suspend the teacher without pay if the charges involve "immoral conduct, conviction of a felony or of any crime involving moral turpitude, . . . incompetency due

---

[4]    Separate procedures are to be followed, for example, when the teacher is charged with a "mandatory leave of absence offense" (namely, crimes involving sex or drugs) (§§ 44940, 44940.5); or when the teacher is "suffering from mental illness of such a degree as to render him or her incompetent to perform his or her duties" (§ 44942).

[5]    There is a 90-day hiatus if the charges involve "unsatisfactory performance." (§ 44938, subd. (b)(1)).

to mental disability, . . . willful refusal to perform regular assignments without reasonable cause," or advocating communism. (§ 44939; *Fontana Unified School Disrict v. Burman* (1988) 45 Cal.3d 208, 215-216.)

If the governing board votes to suspend or dismiss, the board must give the teacher notice of that intent (§ 44934), along with (1) a copy of the written charges (§ 44936), and (2) an advisement that the teacher has 30 days to file a notice contesting the governing board's decision and demanding an evidentiary hearing (§§ 44934, 44937). If the teacher demands an evidentiary hearing, the governing board may either rescind its action or schedule a hearing. (§ 44943.) The hearing is initiated by filing a written statement of charges known as an "accusation."[6] (Gov. Code, § 11503, subd. (a), eff. Jan. 1, 2014; accord, Gov. Code, § 11503, as amended by Stats.1947, c. 491, p. 1470, § 3.) The hearing is before the three-member commission unless the parties stipulate to a hearing before a single, administrative law judge. (§ 44944.) After hearing evidence, the commission must choose between three options: (1) dismissing the teacher; (2) suspending the teacher without pay for a fixed period of time; or (3) finding that the teacher should not be dismissed or suspended. (§ 44944, subd. (c)(1).) The commission's decision is deemed to be the governing board's decision. (§ 44944, subd. (c)(4).) If the teacher was immediately suspended without pay, he or she is entitled to reimbursement for lost wages if that suspension is later overturned. (§ 44946.)

The teacher has the right to seek writ review of the commission's decision. (§ 44945.)

## II.    Subject Matter Jurisdiction of Governing Board and Commission

Plaintiff argues that the board lacked subject matter jurisdiction. His argument rests on two premises: (1) the Education Code requires that the statement of charges and

---

[6]     The Education Code was subsequently amended to do away with the requirement of a separate written accusation as long as the governing board's notice to an employee of its intent to dismiss or suspend the employee is accompanied by written charges filed or formulated under section 44934. (See § 44934, subd. (e), as amended by Stats. 2014, c. 55 (A.B.215), § 3, eff. Jan. 1, 2015.)

accusation be "verified," and this means those documents must be signed under "penalty of perjury" (which they were not in this case); and (2) the absence of a proper verification robs the governing board and the commission of subject matter jurisdiction. Neither premise is legally valid.

Although an accusation need not be verified where, as here, it is signed by an "employee of the agency before which the proceeding is to be held" (Gov. Code, § 11503),[7] plaintiff is correct that a statement of charges must be "duly signed and verified by the person filing them" unless the governing board elects to formulate the charges itself. (§ 44934; accord, § 44939 [same, for immediate suspension without pay].)[8] Plaintiff argues that this verification requirement encompasses a requirement that charges be subscribed under "penalty of perjury."[9] In support of this argument, plaintiff cites language from a 1937 case stating that "[t]he provision for a verification requires merely that what has been properly alleged be affirmed under oath." (*Board of Education v. Jewett* (1937) 21 Cal.App.2d 64, 69 (*Jewett*).) He then points to Code of Civil Procedure section 2015.5, which provides that a requirement of "sworn . . . verification . . . in writing" may be satisfied by an "unsworn . . . verification, . . . in writing" that recites it is made "under penalty of perjury." (Code Civ. Proc., § 2015.5.)

---

[7] Plaintiff argues that the Board's Chief Human Resources Officer is not a "public officer," but her status as a public officer is irrelevant because she is undoubtedly a district employee and, as explained in footnote 3, consequently an employee of the "agency before which the proceeding is to be held."

[8] The governing board did not formulate the charges on its own in this case because the charges presented to it and the accusation the board subsequently produced are substantively identical.

[9] During oral argument, plaintiff further argued that it must be signed and verified by the person *making* the charges (that is, by the percipient witnesses to the charged conduct). This argument is foreclosed by the plain language of the statute, which requires verification by the "person *filing*" the charges. (§ 44934.)

8

We reject this argument for two reasons. First and foremost, a statement of charges is a pleading, not a piece of evidence. (*Kolter v. Commission on Professional Competence* (2009) 170 Cal.App.4th 1346, 1352 [governing board does not conduct evidentiary hearing in deciding whether to approve or reject a statement of charges]; *Board of Education v. Ballou* (1937) 21 Cal.App.2d 52, 55 [likening statement of charges to other charging documents, such as indictments].) This is undoubtedly why it may be filed based on information and belief, rather than personal knowledge. (*Jewett*, *supra*, 21 Cal.App.2d at p. 69; accord, Code of Civ. Proc., § 446, subd. (a) [allowing for verification of civil pleadings on information and belief]; compare Evid. Code, § 702 [generally requiring personal knowledge as prerequisite for admission of evidence].) Because Code of Civil Procedure section 2015.5 is designed to render out-of-court statements admissible as evidence (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 605-606 [discussing use of section 2015.5 declarations to oppose summary judgment motions]), its requirement of a penalty-of-perjury recitation is irrelevant where, as here, the out-of-court statement has no evidentiary value. *Jewett* did not purport to decide the question of whether a penalty-of-perjury declaration is required, and—notwithstanding its broad language—"'[i]t is axiomatic that cases are not authority for propositions not considered.'" (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388.)

Second, even if we assume for the sake of argument that verification does require a penalty-of-perjury recital, the governing board still substantially complied with the verification requirement. As a general matter, "substantial compliance" with the dismissal and suspension procedures "is all that is required." (*Governing Board v. Commission on Professional Competence* (1985) 171 Cal.App.3d 324, 331 (*Governing Board*).) "[T]he purpose of any verification requirement is to assure the good faith of the allegations contained in the paper." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 825.) Here, the Chief Human Resources Officer who signed the statement of charges "verifie[d] on information and belief that the foregoing Charges are true and correct." If we were to insist that she also certify, under the penalty of perjury,

9

to the truth of the information of which she admittedly (and permissibly) has no personal knowledge, we would be "allow[ing] hypertechnical procedural oversights to thwart the orderly process delineated by the statutory scheme" and would be "exalt[ing] form over substance . . . result[ing] in an abuse of the judicial process." (*Governing Board*, at p. 333.)

The second premise of plaintiff's argument—that the absence of a properly verified statement of charges deprives the governing board of subject matter jurisdiction—has already been rejected in *DeYoung*, *supra*, 228 Cal.App.4th 568. There, the statement of charges was presented orally to the board (rather than "in writing," as section 44934 requires). (*Id.* at pp. 572-573.) The court expressly rejected the teacher's argument that this defect rendered the subsequent actions of the governing board and the commission void for want of jurisdiction. (*Id.* at p. 572.) The court cited two reasons for its conclusion. First, section 44934 did not specify a remedy for noncompliance; with such a statute, the court reasoned, "'the language should be considered directory [(permissive)] rather than mandatory.'" (*Id.* at p. 577, quoting *In re C.T.* (2002) 100 Cal.App.4th 101, 111; cf. *In re Cowan* (1991) 230 Cal.App.3d 1281, 1287-1289 [where statute specifies that an affidavit "shall" be presented to initiate contempt proceedings, the total absence of an affidavit voids subsequent proceedings].) Second, at the time *DeYoung* was decided and at the time of the district's actions in this case, section 44944, subdivision (c)(2) provided that the commission's decision that an employee "should not be dismissed or suspended shall not be based on nonsubstantive procedural errors committed by the school district or governing board unless the errors are prejudicial errors." (§ 44944, subd. (c)(2).) *DeYoung* concluded that this mandate should apply to section 44934's verification requirement because doing so not only harmonized the two statutes governing the same topic, but also dovetailed with the "general tenet" that the "'lack of strict compliance with [a statute], in the absence of prejudice, does not render the subsequent proceedings void.'" (*DeYoung*, at p. 579, quoting *In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 880.) This is no doubt why other courts have come to the same conclusion outside the modern educational administrative proceeding context—

10

namely, that "[p]roper verification [is] not a jurisdictional requirement." (See *Jenssen v. R.K.O. Studios, Inc.* (1937) 20 Cal.App.2d 705, 707; accord, *Board of Education v. Mulcahy* (1942) 50 Cal.App.2d 418, 423 [in special proceeding to dismiss tenured teacher, verification of complaint not a jurisdictional requirement]); *United Farm Workers of America v. Agricultural Labor Relations Bd.* (1985) 37 Cal.3d 912, 915 [verification of a pleading not a jurisdictional requirement in California; collecting cases].) Because plaintiff makes no argument on appeal that the allegedly improper verification constituted prejudicial error, *DeYoung* and the cases that precede it on this point apply with full force. Accordingly, we conclude that the governing board and commission had jurisdiction over the dismissal proceedings against plaintiff.

## III.     Constitutional Challenges

### A.     *Skelly claim*

Before a permanent public employee can be subjected to more than "minor disciplin[e]," he or she has a right to certain procedural safeguards prior to the "initial taking of punitive action." (*Skelly*, *supra*, 15 Cal.3d at p. 215.) Unlike the full-blown evidentiary hearing that must generally precede final disciplinary action (*ibid.*), the safeguards that precede initial action need only "include [(1)] notice of the proposed [disciplinary] action, [and] the reasons therefor, [(2)] a copy of the charges and materials upon which the action is based, and [(3)] the right to respond, either orally or in writing, to the authority initially imposing discipline" "before a reasonably impartial, noninvolved reviewer" who has the authority to recommend a final disposition. (*Ibid.*; *Williams v. County of Los Angeles* (1978) 22 Cal.3d 731, 736-737; *Bollinger v. San Diego Civil Serv. Com.* (1999) 71 Cal.App.4th 568, 576.)

Plaintiff complains that the governing board unconstitutionally subjected him to immediate suspension without pay. However, the board's action came after plaintiff was given three memoranda explaining his misconduct in January, April/May and August/September 2012; after he was given written notice of suspension and notice of unsatisfactory acts; and after he and his representative met with the district's

11

administrator of operations, where he was given an opportunity to present a response to the charges.

Plaintiff urges that the administrator of operations was not "reasonably impartial" because the four letters he sent advised plaintiff that he could, in the alternative, elect to resign. However, the language in the letters presented resignation as an "[a]lternative[]" and was in that regard informational rather than coercive. Plaintiff further asserts that the administrator was biased because he did not advise him that any discipline would be reported to the Commission on Teacher Credentialing, as required by regulations. (See Cal. Code. Regs., tit. 5, § 80303.) But this regulation only applies if the teacher is ultimately dismissed, suspended or placed on administrative leave "as a final adverse employment action" (*ibid.*); it has nothing to do with preliminary actions. At oral argument, plaintiff argued that the administrator only asked plaintiff for his side of the story, and thereby implicitly treated the truth of the allegations against him as a "foregone conclusion." But the administrator gave plaintiff exactly what *Skelly* requires—namely, "the right to respond." (*Skelly*, *supra*, 15 Cal.3d at p. 215.)

In sum, substantial evidence supports the finding that plaintiff was accorded his *Skelly* rights.

### B.    *Vagueness challenge to "immoral conduct"*

Due process requires that people be given "fair warning" of what is prohibited, and "[t]he vagueness doctrine 'bars enforcement of "'a statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application.'"'" (*People v. Contreras* (2015) 237 Cal.App.4th 868, 885, quoting *In re Sheena K.* (2007) 40 Cal.4th 875, 890.) Plaintiff argues that the allegation that he engaged in "immoral conduct" as a basis for dismissal and for immediate suspension is too vague both on its face and as applied to him. We reject both challenges.

Plaintiff's facial challenge has been heard and rejected by our Supreme Court. In *Morrison v. State Board of Education* (1969) 1 Cal.3d 214, the court construed the term "immoral conduct" in the Education Code to mean "conduct indicat[ing] that the

12

petitioner is unfit to teach." (*Id.* at p. 229; accord, *Board of Education v. Jack M.* (1977) 19 Cal.3d 691, 697.) *Morrison* went on to enumerate eight different factors bearing on unfitness to teach, including (1) "the likelihood that the conduct may have adversely affected students or fellow teachers," (2) "the degree of such adversity anticipated," (3) "the proximity or remoteness in time of the conduct," (4) "the type of teaching certificate held by the party involved," (5) "the extenuating or aggravating circumstances, if any, surrounding the conduct," (6) "the praiseworthiness or blameworthiness of the motives resulting in the conduct," (7) "the likelihood of the recurrence of the questioned conduct," and (8) "the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers." Once construed in this fashion, *Morrison* concluded that the term "immoral conduct" was "constitutional on its face" and not vague. (*Id.* at pp. 218, 229-230.) Plaintiff asserts that the term is still vague because it is used in both sections 44932 and 44939, and thus may have different meanings in each section. However, this ignores the general maxim that words used in one part of a statutory scheme are presumed to have the same meaning when used in another part of the same scheme. (See *People v. Blackburn* (2015) 61 Cal.4th 1113, 1125.)

Plaintiff's as applied challenge is moot. After plaintiff filed this appeal challenging the denial of his motion to dismiss, the parties agreed to have an administrative law judge conduct the evidentiary hearing on plaintiff's dismissal (in lieu of the commission). At that hearing, the judge upheld plaintiff's dismissal on some grounds, but found that he had not engaged in "immoral conduct." In light of this ruling, of which we take judicial notice (Evid. Code, §§ 452 & 459), plaintiff's challenge to the "immoral conduct" ground is moot. (*People v. J.S.* (2014) 229 Cal.App.4th 163, 170 ["(A)s a general matter, an issue is moot if 'any ruling by (the) court can have no practical impact or provide the parties effectual relief' (Citation.)"].)

13

**DISPOSITION**

The judgment is affirmed.  Plaintiff to bear costs on appeal.

 NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
                                                HOFFSTADT


We concur:

_____, P.J.
           BOREN

_____, J.
        ASHMANN-GERST

14