MATTER OF L—

In EXCLUSION Proceedings

A-11681384

*Decided by Special Inquiry Officer April 4, 1961*
*Approved by Board June 2, 1961*

Expatriation—Section 349(a)(4)(A), 1952 act—Employment as public school teacher in Canada.

Employment as a public school teacher in the Province of Ontario results in expatriation of dual national of United States and Canada under section 349(a)(4)(A) of the 1952 Act. (Cf. *Kenji Kamada v. Dulles*, 145 F. Supp. 457.)

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant, no visa.

## BEFORE THE SPECIAL INQUIRY OFFICER
(April 4, 1961)

DISCUSSION: A reopened hearing in this case was held on March 3, 1961, pursuant to the order of remand of the Board of Immigration Appeals of January 30, 1961. The Board's remand was made on the motion of the Assistant Commissioner, Examinations, requesting withdrawal of the Board's order of November 15, 1960, sustaining the applicant's appeal from the exclusion decision of the special inquiry officer dated July 11, 1960.

The record relates to a married male who was born in Detroit, Michigan, July 15, 1921, and so was a United States citizen at birth under the Fourteenth Amendment to the United States Constitution. The applicant's father was a British subject, as a consequence of which under section 1(1)(b) of the British Nationality and Status of Aliens Act of 1914 the applicant was also a British subject at birth.[1] When applicant was nine months old, his parents took him

---

[1] The record herein does not contain a marriage certificate relating to the applicant's parents. The applicant is uncertain of the date of his parents' marriage, but testified they were married in Detroit. If his parents were not married, then he would not have acquired British nationality through his father at birth. In the absence of any evidence that his parents were not married, a general presumption of legitimacy will prevail, especially in view of the fact that the applicant is recognized by Canadian authorities as a Canadian citizen who acquired Canadian citizenship by operation of law as a British subject and who was a British subject at birth through his father.

313

to Canada, where he has since resided. Under section 9(1)(b) of the Canadian Citizenship Act of 1946 he acquired Canadian citizenship as a British subject who immediately before January 1, 1947, had Canadian domicile, if he did not then already have that citizenship.

On January 22, 1960, at the Detroit-Canada Tunnel, Detroit, Michigan, the applicant applied for admission to the United States for permanent residence as a United States citizen. He was not then in possession of an immigrant visa or any document in lieu thereof. Accordingly, if he is an alien, he is excludable under section 212(a)(20) of the Immigration and Nationality Act. The issue in this case is whether the applicant expatriated as a United States citizen, specifically under section 349(a)(4)(A) of the Act by reason of serving as a public school teacher under the Board of Education of the City of London, Ontario, Canada.

The decision of the special inquiry officer of July 11, 1960, found that the applicant was not expatriated under section 2 of the Act of March 2, 1907 for having taken an oath of allegiance or joining the Canadian Armed Forces on September 21, 1939, since he was then under twenty-one years of age. The possibility that he might have affirmed this oath after attaining majority by serving as a public school teacher in Canada is obviated because applicant did not reach age twenty-one until after January 13, 1941, the effective date of the Nationality Act of 1940, which contains no provision for affirmation of an oath made during minority.

The special inquiry officer's decision of July 11, 1960, discussed possible grounds for expatriation other than section 349(a)(4)(A) of the Immigration and Nationality Act, which the applicant's history as a Canadian soldier and as candidate for the position of a public school teacher could have presented, but none was found applicable. With respect to section 349(a)(4)(A), however, the special inquiry officer found the applicant expatriated. After noting that the applicant had Canadian nationality as required by that section, he resolved the issue of whether the applicant had accepted, served in, or performed the duties of any office, post or employment by concluding that teaching is employment, and resolved the next issue of whether such employment was under the government of a foreign state or a political subdivision thereof by finding that the various area public school boards are under the jurisdiction of the Department of Education of the Province of Ontario, therefore, under the jurisdiction of a political subdivision of the Dominion of Canada and, accordingly, are political subdivisions within the meaning of the Act.

At his first exclusion hearing, the applicant had testified that as a public school teacher he did not hold a government position

and while he had to meet certain governmental requirements in order to teach, he was not considered a government employee and had nothing to do with civil service grants.

The Board of Immigration Appeals in its decision of November 15, 1960, sustained the applicant's appeal and ordered that he be admitted for permanent residence as a citizen of the United States. The Board considered that the record did not sustain the Government's burden to establish loss of citizenship by clear, unequivocal and convincing evidence which does not leave the issue in doubt, relying in part on *Kenji Kamada* v. *Dulles*, 145 F. Supp. 457 (N.D. Cal., 1956), in which the court expressed doubt that teaching in a public school operated by a foreign government is the type of employment condemned by section 401(d) of the Nationality Act of 1940, a predecessor to section 349(a)(4)(A) of the Immigration and Nationality Act.

Thereupon, the Assistant Commissioner, Examinations, Immigration and Naturalization Service, moved for reconsideration of the Board's order of November 15, 1960, as mentioned above, appending to his motion a letter from the Director of Education of London, Canada, dated November 22, 1960, containing information regarding the applicant's employment as a public school teacher. The Board's order of remand, granting the Service's motion, was for consideration of and incorporation into the record of the aforesaid letter and such other action as may be appropriate.

At the reopened hearing, the letter in question was introduced in evidence as Exhibit 1–R and its contents reviewed by the applicant, who stated his substantial agreement with it paragraph by paragraph. With respect to the nature of the employment of a public school teacher in Ontario, this letter states that every teacher must participate in a superannuation fund, which is a provincial fund administered by an official commission and to which the Province of Ontario contributes. All teachers are employed under a contract which the local authority cannot terminate without reasons being given, with the right of appeal to a provincial board of reference. The applicant was inclined to question the last paragraph of the letter to the effect that it is the Public School Act by which he works rather than the Department of Education Act under which he is certificated. An examination of the Public School Act shows, however, that it sets forth the duties and functions of teachers, as well as other school officials, and, in any event, the preceding paragraph of the letter states, "every teacher in the schools of Ontario, and every school board in the Province of Ontario must carry on under the Department of Education Act and the various school acts and regulations." There was also introduced into evidence as Exhibit 2–R a letter dated January 12, 1960, to the applicant from a

Canadian barrister and solicitor indicating that the applicant had lost his American citizenship acquired at birth through employment with a foreign government and was solely a Canadian citizen. The applicant testified that he submitted this letter to the Department of Education as a candidate for a permanent First Class Certificate, which was granted him the following March.

From the letter, Exhibit 1-R, of the Director of Education, it appears clear that employment as a public school teacher in the Province of Ontario is governmental employment, contrary to the applicant's assertion made at the hearing held on January 26, 1960. From the second letter, Exhibit 2-R, and the applicant's statement of the purpose for his submission of it to the Department of Education, it appears that as a dual national he would not have been awarded the permanent certificate. To the same effect, and decisively, is the letter of February 9, 1960, Exhibit 5B, of the Assistant Registrar of the Ontario Department of Education that a waiver of claim to dual citizenship was required of the applicant for his further retention as a public school teacher.

The facts of this case clash squarely with the views expressed by Judge Weinfeld in *Kenji Kamada* v. *Dulles*, *supra*, that teaching in a foreign governmental school system is not the type of employment condemned by section 401(d) of the Nationality Act. Judge Weinfeld was of the opinion that the employment by a foreign government must be such that its performance required absolute allegiance to the foreign government and necessarily excluded allegiance to our government. But the Canadian school authorities did require absolute allegiance of the applicant and did exclude allegiance to our government.

The Public Schools Act of Ontario (Revised Statutes of Ontario, 1950, Chapter 316), in the section relating to teachers, provides:

103. It shall be the duty of every teacher, (a) to teach diligently and faithfully the subjects of a public school course of study as prescribed by the regulations, to maintain proper order and discipline in the school, to encourage the pupil in the pursuit of learning, and to inculcate by precept and example respect for religion and the principles of Christian morality and the highest regard for truth, justice, loyalty, love of country, humanity, benevolence, sobriety, industry and frugality, purity, temperance and all other virtues.

Obviously, one whose duty it is to "inculcate by precept and example . . . the highest regard for . . . loyalty, love of country . . ." should not be a person of divided loyalty and allegiance.

The inculcation of loyalty and patriotism is, as is well recognized, a function of the public schools of the United States. As said by Mr. Justice Minton in *Adler* v. *Board of Education*, 342 U.S. 485 (1952), at page 493, "A teacher works in a sensitive area in a schoolroom. There he shapes the attitude of young minds

316

toward the society in which they live. In this, the state has a vital concern. It must preserve the integrity of the schools." As said by Mr. Justice Douglas in dissent, at page 508, "The public school is in most respects the cradle of our democracy." Similar statements may be found in many cases, examples of which are *Board of Education* v. *Jewett*, 21 Cal. App.2d 64, 68 P.2d 404 (1937), stating in effect that it is the duty of all teachers to endeavor to impress upon the minds of the pupils the principles of patriotism, and *State ex rel. Schweitzer* v. *Turner*, 155 Fla. 270, 19 So.2d 832 (1945), to the effect that teachers by precept and example should teach their students honesty and patriotism.

There seems plenty of room for disagreement with Judge Weinfeld's further expression of his views in *Kenji Kamada* v. *Dulles*, *supra*, that "It is difficult to understand why if plaintiff had been employed by a privately operated school she would not forfeit her American citizenship, whereas performance of the same service in a school operated by a foreign government would effect that result."

Our public school systems are an integral and extremely important part of the Government of the United States. In the majority of the States, oaths of allegiance or loyalty are required of the teacher by statute (*see* National Education Association Manual on Certification Requirements for School Personnel in the United States, 1959 edition, Table 7), and it is a safe assumption that the remaining States exact undivided loyalty by some method or other for teaching in their public schools. The teaching of the three R's is but one function of a public school teacher. His responsibilities as a governmental official are heavy and demanding. Section 349(a)(4)(A) does not expressly require that the "office, post, or employment under the government of a foreign state or a political subdivision thereof" be confined to sensitive positions. Yet, *Adler* v. *Board of Education*, *supra*, indicates that the position of the public school teacher is a sensitive position. In my opinion, employment of the applicant as a public school teacher in the schools of London, Ontario, is employment as contemplated by section 349(a) (4)(A) and inconsistent with retention of United States citizenship.

**FINDINGS OF FACT:** Based upon the evidence of record, I find that:

(1) The applicant was born in Detroit, Michigan, on July 15, 1921;

(2) The applicant, at the time of his birth, was a citizen of the United States;

(3) The applicant, at the time of his birth, was also a citizen of Great Britain;

(4) The applicant was admitted to Canada as a landed immigrant on or about April 12, 1922, and thereafter con-

317

tinuously had Canadian residence and domicile with the exception of a brief period in 1945;

(5) Thereafter, as of April 12, 1927, and, in any event, as of January 1, 1947, the applicant became a citizen of Canada;

(6) The applicant, on and after December 24, 1952, has served in the employment of the Board of Education of London, Canada;

(7) The applicant sought admission to the United States for permanent residence at the Detroit-Canada Tunnel, Detroit, Michigan, on January 22, 1960;

(8) Applicant was not then in possession of any valid immigrant visa or any other entry document permitting him to enter the United States for permanent residence as an alien.

CONCLUSIONS OF LAW:

(1) Under section 349(a)(4)(A), the applicant, who was a national of the United States by birth, has lost nationality by accepting, serving in, or performing the duties of a post, office, or employment under the government of a foreign state or a political subdivision thereof, since he had or acquired the nationality of such foreign state, to wit, Canada;

(2) The applicant is subject to exclusion under the provisions of section 212(a)(20) of the Immigration and Nationality Act, in that, he is an immigrant, not in possession of a valid unexpired immigrant visa, reentry permit, border-crossing identification card, or other valid entry document and not exempted from the presentation thereof by the statute or any regulations made thereunder.

ORDER: It is ordered that the applicant be excluded and deported from the United States.

*It is further ordered* that this case be certified to the Board of Immigration Appeals for review and final decision.

BEFORE THE BOARD
(June 2, 1961)

DISCUSSION: The special inquiry officer certified the case to the Board after ordering the applicant excluded upon the ground stated above.

The applicant became a citizen of the United States by birth in Michigan on July 15, 1921. If the relationship of father and son existed between the applicant and his alleged father, the applicant was also a British subject at birth. He was taken to Canada in 1922 when he was nine months old and, except for a brief period in 1945, has been a resident of Canada. On September 1, 1952,

318

the applicant became an employee of the Board of Education, London, Canada, as a public school teacher and has continued in this employment. The issue presented by the special inquiry officer's decision is whether the applicant lost United States citizenship under the provisions of section 349(a)(4)(A) of the Immigration and Nationality Act, 8 U.S.C. 1481(a)(4)(A).

Section 349(a)(4)(A) provides, as follows:

Sec. 349. (a) From and after the effective date of this Act a person who is a national of the United States whether by birth or naturalization, shall lose his nationality by—

\*     \*     \*     \*     \*     \*     \*

(4)(A) Accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, if he has or acquires the nationality of such foreign state \* \* \*.

In *Kenji Kamada* v. *Dulles*, 145 F. Supp. 457, 459 (N.D. Cal., 1956), the Court stated that employment as a public school teacher was not the type of employment which should cause expatriation, for it was the intent of the statute to include service on behalf of a foreign government "the performance of which required absolute allegiance to the employing government and necessarily excluded allegiance to our government." The special inquiry officer accepted the test and concluded that under the Canadian law employment as a teacher required the absolute allegiance of the applicant and excluded allegiance to our government. The statement of the court is dicta. We do not believe that the test requires consideration as to whether the employment by the foreign government is inconsistent with retention of allegiance to the United States. It is sufficient that the employment is under the government of a foreign sate and that the person employed has the nationality of the foreign state. The record establishes the existence of these factors. No change will be made in the special inquiry officer's order (*Matter of G—, 4—521*).

ORDER: It is ordered that no change be made in the special inquiry officer's order of exclusion.